LAURA M. WEINSTEIN *v.* MORTON WEINSTEIN
(6467)

SPALLONE, O'CONNELL and NORCOTT, Js.

Argued February 14—decision released June 13, 1989

*Abraham I. Gordon,* with whom, on the brief, were *Ronald D. Japha* and *Richard S. Scalo,* for the appellant (plaintiff).

*William J. Eddy,* with whom, on the brief, was *William J. Tracy, Jr.,* for the appellee (defendant).

SPALLONE, J. The plaintiff appeals from the judgment rendered in an action for the dissolution of her marriage, claiming that the trial court erred (1) in awarding the parties joint custody of the minor children, with primary residence with the defendant, (2) in delegating its judicial role to counsel for the minor children by directing counsel to perform certain functions postjudgment, and by ordering the parties to undergo postdissolution counseling with the children, (3) in failing to award the plaintiff counsel fees, (4) in distributing the property between the parties as it did, (5) in failing to award alimony to the plaintiff, (6) in failing to allow witnesses produced by the plaintiff to testify as experts regarding the valuation of the defendant's business interests, and (7) in denying the plaintiff a fair trial. We find error, in part.

The plaintiff, Laura Weinstein, and the defendant, Morton Weinstein, were married on January 5, 1974. They are the parents of two minor children, a son, born June 8, 1978, and a daughter, born December 25, 1979. Marital difficulties developed between the parties, resulting in their separation in February, 1986, and the filing of this action in April, 1986.

After a fully contested trial, the court expressly found that "in this matter . . . the plaintiff was primarily responsible for the breakdown of the marriage. She is the one who wanted to end the marriage, she asked the defendant to leave the marital home, and he left. . . . The court [finds that the] primary cause of the breakdown of the relationship was with the plaintiff." Further, the court expressly found that "[b]oth parties are employable with substantial earning capacities. The plaintiff has substantially greater assets than the defendant . . . at the present time, and a much

greater capacity to acquire assets in the future from the various family trusts and partnerships." Our review of the transcripts reveals that the trial court's findings and conclusions are fully supported by the evidence.

The plaintiff's first claim is that the trial court erred in awarding joint custody of the minor children, with primary residence with the defendant. Determining the custody and residence of the minor children of parties to dissolution actions is a serious task that calls into play the broad discretion of the trial court. The trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant. *Leo* v. *Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985); *Tutalo* v. *Tutalo,* 187 Conn. 249, 251, 445 A.2d 598 (1982). In a determination as to whether the trial court could reasonably conclude as it did on the basis of the evidence before it, every reasonable presumption should be given in favor of the correctness of its action. *Gallo* v. *Gallo,* 184 Conn. 36, 44–45, 440 A.2d 782 (1981); *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 584, 362 A.2d 855 (1975). The trial court's decision may be disturbed on appeal only when there has been an abuse of discretion. *Seymour* v. *Seymour,* 180 Conn. 705, 709, 433 A.2d 1005 (1980). We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence. See Practice Book § 4061; *Dubicki* v. *Dubicki,* 186 Conn. 709, 717, 443 A.2d 1268 (1982); *Hall* v. *Hall,* 186 Conn. 118, 123–24, 439 A.2d 447 (1982); *Seymour* v. *Seymour,* supra.

The trial court expressly found that "both parents appear to be loving and caring parents." The court noted, however, that "the plaintiff was much less attentive to her children before the separation than after

the separation" and that she had "exhibited questionable judgment regarding the children several times since the separation." The court cited the following four examples of incidents reflecting the plaintiff's questionable judgment: (1) staying in the same motel room with her two children in one bed while she and her boyfriend shared the other bed, while the dissolution action was pending; (2) regularly arranging to leave the children with relatives and friends rather than with the defendant when she had appointments or when she was going away with her boyfriend; (3) taking the children out of school when she took vacations to Florida, even though school officials objected and one child was not doing well in school during that time; and (4) ignoring court visitation orders whenever the orders conflicted with her personal plans. The court found that the defendant was "the primary parent before the separation"; the defendant was the one who "woke the children, fed them, got them off to school, took them to many activities, took an active role in their schooling . . . ." The court said, "[the defendant] has exhibited better parenting skills than the plaintiff. He certainly has exhibited better judgment. He is not perfect, but what parent is? The court believes he will use better judgment as the primary parent of the children. He will provide for their health needs, spiritual needs, educational needs, financial needs, while having a loving relationship with them. . . . I truly believe that the defendant will be more attentive to the children's needs." In view of these findings, we cannot say that the trial court abused its broad discretion in concluding that it was in the best interests of the parties' children for them to reside primarily with the defendant.

The plaintiff's second claim of error is that the trial court exceeded its jurisdictional authority in improperly delegating judicial functions to counsel appointed

for the minor children pursuant to General Statutes
§ 46b-54[1] and in ordering the parties and their children
to undergo postjudgment counseling.[2]

In its order, the court noted that Christine White-
head, counsel for the minor children, had, in effect,
served as "Guardian Ad Litem for the minor children"
and also as "a mediator, a negotiator and an all around
stabilizing force for the parties." The court ordered that
Whitehead "shall continue to serve as attorney for the
minor children after judgment" and appointed her
"trustee for the minor children" for certain purposes.[3]

---

[1] "[General Statutes] Sec. 46b-54. (Formerly Sec. 46-43). COUNSEL FOR
MINOR CHILDREN. DUTIES. (a) The court may appoint counsel for any minor
child or children of either or both parties at any time after the return day
of a complaint under section 46b-45, if the court deems it to be in the best
interests of the child or children. The court may appoint counsel on its own
motion, or at the request of either of the parties or of the legal guardian
of any child or at the request of any child who is of sufficient age and capa-
ble of making an intelligent request.

"(b) Counsel for the child or children may also be appointed on the motion
of the court or on the request of any person enumerated in subsection (a)
of this section in any case before the court when the court finds that the
custody, care, education, visitation or support of a minor child is in actual
controversy, provided the court may make any order regarding a matter
in controversy prior to the appointment of counsel where it finds immedi-
ate action necessary in the best interests of any child.

"(c) Counsel for the child or children shall be heard on all matters per-
taining to the interests of any child, including the custody, care, support,
education and visitation of the child, so long as the court deems such rep-
resentation to be in the best interests of the child."

[2] The issue of postjudgment counseling was not briefed or argued by the
parties. We therefore consider the issue as abandoned. *State* v. *Fiocchi*,
17 Conn. App. 326, 327 n.3, 553 A.2d 181, cert. denied, 210 Conn. 812,
556 A.2d 611 (1989).

[3] As trustee, Whitehead was appointed "primary and irrevocable trustee
beneficiary for the benefit of the minor children" with regard to certain
life insurance policies the court ordered each parent to maintain. She was
also to receive, as trustee for the minor children, certain sums of money
the court ordered each parent to pay on their behalf and to purchase cer-
tain bonds in their names. The plaintiff claims these orders as error in her
reply brief, but made no effort to brief the issues. We therefore decline
to review these claims of error. See *Sachem's Head Assn.* v. *Lufkin,* 168

In ordering that the plaintiff and the defendant would share equally the costs of all secular and religious school education, tutoring, summer camp tuition, and dance, music and sports lessons for the children, the court made the following order: "[I]f the parties cannot agree on any such expenses being incurred, Attorney Whitehead shall be consulted and any such expenses *approved by Attorney Whitehead* shall be paid fifty-fifty by the parties." (Emphasis added.) As part of its joint custody order, the court also ordered that the plaintiff would be entitled to see the children one evening per week for dinner and that Whitehead would "determine which evening per week will work out best for the parents."

We find that, in making the latter two orders, the trial court in effect delegated its judicial function to counsel for the minor children, thus exceeding its power. General Statutes § 46b-56 authorizes the court to "make or modify any proper order regarding the education and support of the children and of care, custody and visitation . . . ." General Statutes § 46b-54 permits the court, in actions for dissolution of marriage, on its own motion or upon request of either of the parties, the child, or the child's guardian, to appoint counsel for any minor child or children of either or both parties. Section 46b-54 (c) provides: "[C]ounsel for the child or children *shall be heard* on all matters pertaining to the interests of any child . . . ." (Emphasis added.) According to § 46b-54 (c), the role of counsel is to advocate, not adjudicate. No authority is given to court appointed counsel to issue orders affecting the parties or their children or to resolve, in quasijudicial fashion, disputes between the parties concerning the children. Such decision making is properly a part of the judicial function and can be done only by one clothed

Conn. 365, 366, 362 A.2d 519 (1975). For reasons discussed in the opinion, however, we remand to the trial court with direction to reconsider the orders.

with judicial authority. See *Valante* v. *Valante,* 180 Conn. 528, 532–33, 429 A.2d 964 (1980); *Cotton* v. *Cotton,* 11 Conn. App. 189, 194–95, 526 A.2d 547 (1987). The trial court's orders empowering Whitehead to resolve disputes between the parties regarding expenses incurred for the education and activities of the children, and empowering her to select the evening of the week the plaintiff would see the children for dinner, amounted to an improper delegation of its judicial function. Accordingly, it is necessary to set aside those orders and to remand the case to the trial court with instruction to hold a hearing and to make such orders as are required in accordance with the law. On remand, the trial court should also reconsider the other orders involving Whitehead, i.e., the order appointing her to act as counsel for the minor children postjudgment and the two orders appointing her trustee for the benefit of the minor children. A court considers multiple factors in fashioning an equitable award, and each of the underlying factors may be dependent on the other. See *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 424, 479 A.2d 826 (1984). We have no way of knowing from the record whether the other orders would have been made, or whether they would have been different, had the trial court understood the proper scope of the role of court-appointed counsel. Accordingly, the trial court should reconsider all the orders mentioned herein involving Whitehead.

The plaintiff's third claim is that the trial court erred in failing to award her counsel fees. The trial court ordered that each party would be responsible for his or her own counsel fees, indicating that "each party has adequate assets and income and earning capacity to pay their own counsel fees, and each shall pay their own attorney's fees with no contribution from the other party." The plaintiff argues that the evidence shows she did not have "ample liquid funds" to pay her legal

fees and that "a high asset structure alone does not preclude an award of counsel fees."

General Statutes § 46b-62 permits the trial court, in actions for dissolution of marriage, to "order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82." The criteria of § 46b-82 include, inter alia, the "occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties." In reviewing a decision regarding counsel fees, we determine whether, in deciding as it did, the trial court abused its discretion. *Darak* v. *Darak,* 210 Conn. 462, 477, 556 A.2d 145 (1989); *Garrison* v. *Garrison,* 190 Conn. 173, 177–78, 460 A.2d 945 (1983); *Weiman* v. *Weiman,* 188 Conn. 232, 236, 449 A.2d 151 (1982). Our review of the record reveals no abuse of discretion. The trial court's conclusion that the plaintiff had adequate assets, income and earning capacity to pay her own legal fees is amply supported by the evidence. The trial court did not err in failing to award the plaintiff counsel fees.

The plaintiff's fourth, fifth, sixth and seventh claims of error are related and will be discussed together. These claims are predicated upon alleged errors made by the court in its rulings on evidence introduced for the purpose of ascribing value, ownership and derivation of the real and personal property that was subject to distribution by the court in property settlement awards. Also at issue is the court's finding regarding the earning capacity of the plaintiff and its decision not to award the plaintiff alimony. The major points of contention raised by the plaintiff center upon the court's property distribution regarding the marital home, certain Washington State Public Power Supply bonds valued at $100,000, and the defendant's interest in his family's businesses.

The plaintiff claims error in the court's valuation of the parties' marital home. She claims that the court should not have permitted Karen Capagna, a licensed and practicing real estate agent, to testify as an expert regarding the value of the home. Whether a witness is qualified to testify as an expert is a matter that rests in the sound discretion of the trial court. *DiBella* v. *Widlitz,* 207 Conn. 194, 202, 541 A.2d 91 (1988). The test of admissibility is whether the witness has a special skill, knowledge or experience that would assist the trier of fact in determining an issue. *State* v. *George,* 194 Conn. 361, 373, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973). The court looks to the particular training, experience and knowledge of the witness to determine whether the witness would be in a position to furnish the trier of fact with special guidance. *DiBella* v. *Widlitz,* supra, 202. The trial court's decision is not to be disturbed on appeal unless there has been an abuse of discretion. Id.; *Siladi* v. *McNamara,* supra.

The evidence elicited regarding the qualifications of Capagna indicates that she was a licensed real estate agent who had worked in the general area of West Hartford for fourteen years. She testified that she had practical experience in selling, appraising and developing real estate, that she had studied property appraisal methods, and that she had previously testified in court concerning real property values. She testified that she had undertaken a market analysis of the house with reference to factors such as comparable sales, replacement value and inflation value. She was familiar with sales activity in the relevant market and was familiar with building and replacement costs. We conclude that the trial court could reasonably find that Capagna was able to furnish it with special guidance in determining the value of the parties' marital home.

The plaintiff also claims that her own opinion of value should have been accepted by the court. This assertion has no basis in law. The weight to be given testimony is a matter for the trier of fact. *Blake* v. *Blake,* 207 Conn. 217, 225, 541 A.2d 1201 (1988).

The plaintiff next challenges the trial court's distribution of certain property. The court made the following findings and orders with regard to the marital home, the Washington State Public Power Supply bonds, and certain business interests. The marital home was worth $750,000. The amount representing the appreciation of the property was $400,000. The plaintiff, using a gift of money from her father, paid the purchase price for the marital home and contributed to the enhancement of its value, and the defendant contributed to its value by paying substantial sums of money for its upkeep and maintenance. On the basis of these facts, the court concluded that "a fair and equitable division of the property" would be "to divide the appreciation 65 percent for the plaintiff and 35 percent for the defendant." Thus, the plaintiff was assigned an interest in the equity of the marital home worth $260,000, and the defendant was assigned an interest worth $140,000. With regard to the Washington State Public Power Supply bonds, the court found that the bonds had been given as gifts to both the plaintiff and the defendant by the plaintiff's father. The court ordered that the plaintiff should retain title to the bonds, but that the defendant should receive from the plaintiff one half of their value ($50,000). In addition, the court ordered that the defendant was entitled to a credit of $24,000 because of the operation of a pendente lite order entered on April 22, 1987. The court ordered the plaintiff to execute a promissory note to evidence the total amount due to the defendant pursuant to the court's orders and to give the defendant a first mortgage on the marital home to secure the debt.

With regard to certain business interests held by the defendant, the court found that the defendant's father had given these interests as gifts to the defendant alone and ordered that the plaintiff not be given any share in them. Similarly, the court ordered that the defendant would not receive any share of certain family trust and partnership interests held by the plaintiff. On appeal, the plaintiff claims, essentially, that the trial court's division of the property was inequitable.

General Statutes § 46b-81 permits the trial court, at the time of entering a decree dissolving a marriage, to "assign to either the husband or wife all or any part of the estate of the other." In effecting a distribution of property, the court is required to consider the length of the marriage, the causes for the dissolution of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income, and the contribution of each in the acquisition, preservation or appreciation in value of their respective estates. General Statutes § 46b-81 (c). The trial court is not required to make express findings on each of the statutory considerations. *Carpenter* v. *Carpenter*, 188 Conn. 736, 740, 453 A.2d 1151 (1982). The trial court is accorded wide discretion in allocating property. Id., 742. While the trial court must consider the delineated statutory criteria, no single criterion is preferred over the others, and the court is accorded wide latitude in varying the weight placed on each item under the peculiar circumstances of each case. Id., 740–41. The trial court's disposition will be upheld on appeal if the court had a reasonable basis for its assignment of the property. *Krause* v. *Krause*, 189 Conn. 570, 572, 456 A.2d 1204 (1983).

We have reviewed the record and conclude that the trial court did not abuse its discretion in distributing

the property among the parties as it did. The court considered the contribution of each of the parties in the acquisition, preservation and appreciation in value of the property, and took into account the fact that the plaintiff had a "clear" future ability to acquire assets of at least two and one-half to four million dollars from various family trusts and partnerships.[4] The record is clear that the court carefully considered the statutory criteria of § 46b-81 (c) in making its award. We agree with the trial court that the division was fair and equitable and we find no abuse of discretion.

The plaintiff claims that the trial court erred in not awarding her alimony. After properly assessing the parties' relative earning capacities, asset holdings, and ability to acquire assets, in accordance with General Statutes § 46b-82, the trial court awarded no alimony to either party. The plaintiff claims, however, that the court determined her earning capacity by erroneously considering the testimony of Capagna, who, she claims, was not qualified to testify regarding her earning capacity. This claim of error is groundless. The trial court could reasonably have considered Capagna to be sufficiently knowledgeable about the real estate field to assist it in evaluating the plaintiff's potential earning capacity as a real estate agent. As a licensed real estate agent, Capagna had personal experience regarding real estate earnings. "The term 'expert' may be extended to 'all persons professionally acquainted with the science or practice in question.' " *Perez* v. *Mount Sinai Hospital*, 7 Conn. App. 514, 518, 509 A.2d 552 (1986);

---

[4] Specifically, the court said: "The court notes for the record that the property settlement orders leave the plaintiff with the vast majority of assets. She will have at least $1,500,000 in assets left after the property distribution orders, and current assets and trust corpuses. Her future ability to acquire assets is clear. Depending on the performance of the various . . . [family trusts and partnerships], she will have several million dollars in assets; at least two and a half to four million seems to be a fair calculation."

*Bryan* v. *Bradford,* 50 Conn. 246, 248 (1882). It is largely a matter of judicial discretion whether a witness has been shown to have sufficient experience and opportunity of observation to render his opinion on a particular question. *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73 (1964); *Coffin* v. *Laskau,* 89 Conn. 325, 329, 94 A. 370 (1920). The witness needs only sufficient experience to be conversant with the subject matter and to acquire some measure of special knowledge. *Oborski* v. *New Haven Gas Co.,* supra; *Coffin* v. *Laskau,* supra. We cannot say that the trial court erred in utilizing information provided by Capagna in determining the plaintiff's potential earning capacity.

The plaintiff also claims that the court was not adequately apprised of the defendant's financial position because it refused to permit two witnesses to testify regarding the parties' financial status. The plaintiff offered the testimony of her father, Ben Marks, concerning his cash analysis of the parties' finances during the last full year of their marriage, as additional evidence of the financial situation and lifestyle of the parties. Marks testified that he had received some training in accountancy for which he had earned a certificate, but that he did not have a degree in accounting. He testified that he had been running his own businesses since 1961, but that he had never practiced as a public accountant. The defendant objected to Marks' testimony on the ground that Marks was not sufficiently qualified to testify as an expert. In sustaining the defendant's objection and ruling that Marks could not testify regarding the cash analysis he had prepared, the court noted that experts "are there to help the court" and that "one presumes an expert is somewhat impartial" and is someone who is "not going to have a tremendous bias in favor of one or the other." The court noted that the witness had prepared a financial statement on behalf of the plaintiff and that it "clearly

is not accurate" and that it contained entries "that are, by no accounting definition, a liability." The court pointed out that the cash analysis the witness had prepared had been based upon "information presented to him by his daughter." The court concluded that the witness was not sufficiently qualified to testify as an expert and sustained the defendant's objection. The plaintiff contends that the trial court erred in not permitting Marks to testify as an expert.

Whether a witness is qualified to testify as an expert is a matter that rests in the sound discretion of the trial court, and the court's decision will not be disturbed on appeal unless the court has abused its discretion. *DiBella* v. *Widlitz,* supra, 202. We cannot say that the trial court's conclusion that Marks was unlikely to furnish meaningful assistance represented an abuse of discretion. Bias may properly be implied from the relationship of a witness to a party. *State* v. *Asherman,* 193 Conn. 695, 719–20, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed.2d 814 (1985). Moreover, the essential facts on which an expert opinion is based are an important consideration in determining the admissibility of his opinion. *State* v. *Douglas,* 203 Conn. 445, 452, 525 A.2d 101 (1987). " 'Where the factual basis of an opinion is challenged the question before the court is whether the uncertainties in the essential facts on which the opinion is predicated are such as to make an opinion based on them without substantial value.' " *State* v. *Douglas,* supra, 452–53, quoting *State* v. *Asherman,* supra, 716–17; see also *Sears* v. *Curtis,* 147 Conn. 311, 314–15, 160 A.2d 742 (1960). The trial court could reasonably conclude that the plaintiff's father was too likely to be biased and was not sufficiently qualified in accounting to provide useful assistance.

The plaintiff also claims that the trial court erred in refusing to permit Michael Novosel to testify as an

expert regarding valuation of the businesses in which the defendant held interests. Novosel testified that he had a degree in accounting and that he was a certified public accountant. Novosel testified that his method of valuing a business was to determine the business' gross profits. When the plaintiff's counsel asked Novosel to give his opinion of the value of one of the defendant's businesses, the defendant objected on the grounds that there was an inadequate basis for the witness' opinion in that the witness had not inspected any of the books or records of the business and had not established the legitimacy of his valuation method. The court agreed, indicating that it found the witness unqualified to testify as an expert regarding valuation of businesses and that, because the witness had not examined documents that would enable him to value the business, there was no basis for him to render an opinion.

Again, the trial court has broad discretion in ruling on the admissibility of expert testimony. *DiBella* v. *Widlitz,* supra. We find no abuse of discretion in the trial court's conclusion that there was an insufficient basis for Novosel's opinion of value to permit him to testify on that subject.

Having found no error in the trial court's rulings regarding the expert testimony proffered by the plaintiff, we next consider whether, as claimed by the plaintiff, the trial court erred in not awarding the plaintiff alimony. There is no absolute right to alimony. *Valante* v. *Valante,* 180 Conn. 528, 530, 429 A.2d 964 (1980); *Thomas* v. *Thomas,* 159 Conn. 477, 486, 271 A.2d 62 (1970). Awards of alimony incident to a marital dissolution rest in the sound discretion of the trial court. *Valante* v. *Valante,* supra. As we have pointed out, the trial court complied with General Statutes § 46b-82 by considering the enumerated statutory factors in deciding whether to award alimony. The trial court found that the plaintiff had a total annual earning capacity

from employment, income from family business interests, and income from bonds of $95,000 to $150,000, depending, in part, upon whether she worked full-time or part-time, with between $54,000 and $78,000 of that income being substantially tax free. The court found that the defendant, on the other hand, had an annual earning capacity of $235,000, all taxable income. The court found that both the plaintiff and the defendant were employable "with substantial earning capacities" and that "the plaintiff has substantially greater assets than the defendant does at the present time, and a much greater capacity to acquire assets in the future from the various family trusts and partnerships." In light of these findings, which are supported by the evidence, it is clear that the trial court did not abuse its discretion in deciding not to award the plaintiff alimony.

The plaintiff also claims that the trial court erred in assessing a $24,000 credit on behalf of the defendant based on a previous order of the court on a motion for modification of alimony pendente lite. The plaintiff characterizes the court's assessment of this credit as an impermissible retroactive reduction of an award of alimony pendente lite.

The following facts are relevant. By motion filed March 12, 1987, the plaintiff requested that a previous order entered September 17, 1986, awarding her alimony and child support pendente lite, be modified to increase the payments, which at that time totaled $1500 per week ($1000 per week alimony and $500 per week support). On April 22, 1987, after a hearing, the trial court entered the following order: "Any modification of pendente lite financial orders at the time of dissolution shall relate back to this date [April 12, 1987], creating either an arrearage or a credit." At the time the trial court rendered its orders and judgment, after noting that it would not award either party permanent alimony, the trial court calculated on behalf of the

defendant a credit of $24,000 ($1000 per week for each of the twenty-four weeks between the April 22 order and the date of the dissolution) for alimony pendente lite and ordered that that amount be added to the defendant's portion of the property settlement.[5] The court ordered the plaintiff to give the defendant a mortgage on the marital residence to secure payment of this sum as well as other sums the court had ordered the plaintiff to pay the defendant as part of the property settlement.

The question presented by this case is whether, at the time of the rendition of a judgment dissolving a marriage, the trial court can properly order a spouse who had been receiving alimony pendente lite payments, pursuant to court order, to pay back a portion of that money on the authority of an order such as the April 22 order involved here. We hold that it cannot.

In ordering the plaintiff to repay $24,000 of the money she had received from the defendant in alimony pendente lite payments, the trial court indicated that the basis for its decision was the April 22 order on the plaintiff's motion to modify the award of alimony and support pendente lite. That April 22 order essentially postponed decision on the motion to modify until the time of judgment and directed the court to decide at that time whether the plaintiff should have received more or less alimony pendente lite. Moreover, the April 22 order made that determination turn upon whether a *permanent* award of alimony was ultimately made, and upon the amount, if any, of such award. The court's reliance on such an order was erroneous. The purpose of alimony pendente lite is to provide support to a spouse who the court determines requires financial assistance pending the dissolution litigation and the

---

[5] The court expressly indicated that it was not ordering a credit for child support.

ultimate determination of whether that spouse is entitled to an award of permanent alimony. See General Statutes §§ 46b-82 and 46b-83; *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 548, 295 A.2d 519 (1972); *Smith* v. *Smith,* 151 Conn. 292, 297, 197 A.2d 65 (1964); *Hiss* v. *Hiss,* 135 Conn. 333, 337, 64 A.2d 173 (1949). When the final decree of dissolution is rendered, any orders regarding alimony pendente lite are merged in the decree. *Tobey* v. *Tobey,* 165 Conn. 742, 745, 345 A.2d 21 (1974). Pendente lite orders " 'cease to exist once a final judgment in the dispute has been rendered because their purpose is extinguished at that time.' " *Caracansi* v. *Caracansi,* 4 Conn. App. 645, 652, 496 A.2d 225, cert. denied, 197 Conn. 805, 499 A.2d 56 (1985), quoting *Connolly* v. *Connolly,* 191 Conn. 468, 480, 464 A.2d 837 (1983); *Yontef* v. *Yontef,* 185 Conn. 275, 291, 440 A.2d 899 (1981); *Tobey* v. *Tobey,* supra, 745; *Saunders* v. *Saunders,* 140 Conn. 140, 146, 98 A.2d 815 (1953).

If the purpose of alimony pendente lite is to provide a present source of support pending resolution of the case, any order postponing until the time of judgment the decision of a request for an increase in alimony pendente lite defeats that purpose because the asserted need for prejudgment support can no longer be addressed at the time of judgment.[6]

---

[6] We think it is doubtful that the trial court has the power to make an award of alimony pendente lite at the time of judgment. While it is possible at the time of judgment and thereafter to preserve the rights of a party to enforce collection of arrearages owed pursuant to a *prior* pendente lite alimony order; see *Smith* v. *Smith,* 151 Conn. 292, 297, 197 A.2d 65 (1964) (characterizing accrued alimony pendente lite as a debt), and *Tobey* v. *Tobey,* 165 Conn. 742, 745–46, 345 A.2d 21 (1974) (noting that collection of accrued alimony pendente lite can be enforced postjudgment if the judgment recognizes and holds the errant party accountable for the arrearage); it is implausible to conclude that it is possible for a *new* award of alimony pendente lite to be made at the time of judgment, when the litigation is no longer pending and the reason for such an award no longer exists.

Moreover, the order was improper because, by its terms, it required the decision regarding the propriety of an increase in alimony pendente lite payments to turn upon whether the plaintiff was ultimately awarded permanent alimony. The order expresses the court's belief that the alimony pendente lite award should be subject to increase or decrease based solely upon the plaintiff's relative degree of success in obtaining an award of *permanent* alimony. Such a belief manifests a misapprehension of the purpose of alimony pendente lite. Alimony pendente lite is not properly treated as an accolade, with the measure of its appropriateness and amount being the degree of success the party later has in obtaining a permanent award.[7] When called upon to decide whether an award of alimony pendente lite should be modified, the court should determine whether there has been a substantial change in circumstances that warrants an increase; General Statutes § 46b-86 (a); and either grant or deny the motion accordingly. Deferring the decision until the time of judgment, with the outcome to depend upon the irrelevant consideration of whether the movant is ultimately awarded permanent alimony, is improper. We conclude, therefore, that the trial court erred in ordering the plaintiff to repay the $24,000 on the purported authority of the improper April 22 order.

Having found the April 22 order to be an improper basis for an award at the time of judgment of alimony pendente lite, we conclude that the trial court erred

---

[7] The impropriety of linking the decision on a request for alimony pendente lite with the ultimate determination of whether an award of permanent alimony is warranted is shown by at least two cases. With regard to payments made pursuant to an alimony pendente lite order, our Supreme Court has said, "[e]ven should judgment ultimately be rendered against [the payee wife], the [payor] husband would have no right to be reimbursed." *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 548, 295 A.2d 519 (1972); *Hiss* v. *Hiss,* 135 Conn. 333, 336, 64 A.2d 173 (1949).

in ordering the plaintiff to repay the $24,000 because, as the plaintiff claims, the effect of that order is an impermissible retroactive modification of the original September 1986 award of alimony pendente lite. In *Sanchione* v. *Sanchione,* 173 Conn. 397, 378 A.2d 522 (1977), recently reaffirmed by our Supreme Court in *Darak* v. *Darak,* 210 Conn. 462, 479, 556 A.2d 145 (1989), that court held that General Statutes (Rev. to 1977) § 46-54 (now § 46b-86) does not authorize the court retroactively to modify an award of alimony. Although *Sanchione* is factually distinguishable from the present case,[8] we think that the rule announced therein, that what is now General Statutes § 46b-86 does not permit retroactive modification of permanent alimony, applies to preclude retroactive modification of alimony pendente lite orders as well. The court in *Sanchione* based its conclusion on, inter alia, the absence of express legislative authorization of retroactive modification of permanent alimony awards. Following the reasoning of our Supreme Court in *Sanchione,* we conclude that, in the absence of express legislative authorization for retroactive modification of alimony pendente lite, General Statutes § 46b-86 also does not permit retroactive modification of an award of alimony pendente lite.

The trial court's order requiring the plaintiff to pay back $24,000 she had received in alimony pendente lite payments was, in effect, a retroactive modification of an award of alimony pendente lite. The plaintiff was entitled, pursuant to the September 1986 pendente lite alimony award, to receive from the defendant $1000 per week pendente lite. The court's April 22 order on the plaintiff's motion to modify did not alter that award

---

[8] *Sanchione* v. *Sanchione,* 173 Conn. 397, 378 A.2d 522 (1977), involved a postjudgment modification of a permanent award of alimony that had the effect of relieving the contemnor of the obligation to pay a portion of an already accrued alimony debt.

and was ineffective, as we hàve said, to authorize the court to do so at the time of judgment. Thus, when the court ordered the plaintiff to pay back money she had duly received pursuant to the September pendente lite order, it in effect modified the September award retroactively. This was erroneous.

There is error in part, the trial court's orders directing counsel for the minor children to resolve disputes between the parties regarding expenses incurred for the education and activities of the children and to choose an evening for the plaintiff to share parenting time are set aside, and the case is remanded for further proceedings in accordance with this opinion. The order of the trial court requiring the plaintiff to repay the defendant $24,000 is vacated, and the trial court is directed to correct the judgment accordingly.

In this opinion the other judges concurred.