[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a marital dissolution action commenced by the CT Page 8098 plaintiff Dean Strong by complaint dated August 19, 1993. In addition to a dissolution of the marriage, Mr. Strong sought an equitable property settlement as well as such other relief, legal and equitable, as deemed proper by the court. On September 14, 1993, the defendant, Francesca M. Strong appeared by counsel. Though the parties thereafter filed numerous motions addressing pendente lite issues the next activity of note, for purposes of this procedural review, was the filing by the defendant Francesca Strong of an answer and cross complaint dated September 19, 1994 through which she joined the plaintiff's request for a dissolution of the marriage. In addition, the defendant sought an allowance to defend, an allocation of liabilities, a return of personal property as well as such other relief as deemed necessary and proper. The defendant thereafter, on October 3, 1994, filed an amended cross complaint through which she now seeks, in addition to the relief previously requested, an award of alimony. The plaintiff thereafter amended his complaint by pleading dated October 11, 1994 and added to his prayer for relief a request that he be awarded alimony as well as an allowance toward his counsel fees.
The matter, having been claimed for the limited contested list, was assigned on February 24, 1995 for trial which began on March 24, 1995. The heating required seven trial days spanning three months, commencing on March 24, 1995 and concluding on June 12, 1995. In addition to the testimony of the parties and their witnesses, numerous exhibits were introduced. Additionally, at the time of trial the parties filed financial affidavits as well as their respective proposed orders.
The court, having carefully considered all the oral and documentary evidence adduced at trial and in the light of applicable statutory and decisional law, makes the following findings and orders:
The plaintiff, Dean R. Strong and the defendant, Francesca M. Strong were married on October 5, 1987 in Windsor, Connecticut. The defendant's birth surname was Orsini.
The plaintiff resided continuously in the State of Connecticut for more than one year before the commencement of this action.
The parties have had no children. In addition, no children have been born to the defendant since the date of her marriage to the plaintiff. CT Page 8099
Neither party receives assistance from the State of Connecticut or any of its municipalities.
The marriage of the parties has broken down irretrievably without hope of reconciliation and, accordingly, should be dissolved by a decree of marital dissolution.
All statutory stays have expired. The court has jurisdiction over the parties as well as their marriage.
The plaintiff, who was born on September 30, 1957, is presently thirty seven years of age. He has a Bachelor of Science Degree from the University of Connecticut with a concentration in finance. Presently he is employed at Foxwoods Casino on the Mashantucket Indian Reservation in Ledyard, Connecticut, earning a weekly gross of approximately seven hundred ($700) dollars. When the plaintiff first met the defendant in the spring of 1987 he had few assets. He owned a Chevrolet motor vehicle which was subject to a loan. (After the parties married the loan was paid off and the plaintiff purchased a new truck for approximately thirteen thousand ($13,000) dollars.) He had been employed as a life, health, and disability insurance salesperson since January of 1987. Additionally, he received income as an officer in the Army National Guard. Shortly thereafter, in the summer of 1987, after the defendant had moved in with the plaintiff into an apartment he had initially rented from her, Mr. Strong left his insurance sales employment and began assisting the defendant with her various business interests. Prior to Foxwoods, Mr. Strong's employment efforts during the marital years consisted of activities related to Mrs. Strong's rental properties, participation in the operation of her care known as the Tobacco Shed (The Shed), and a brief unsuccessful effort to operate a consignment shop in a building owned by Mrs. Strong with the assistance of funds advanced by Mrs. Strong for its start-up. The plaintiff acknowledged in writing an obligation to repay these amounts to the defendant. He also worked for a temporary agency for a period of one week.
Mr. Strong was in the National Guard from 1984 to March of 1994 excepting one year in which he took a leave of absence. He is now in the inactive ready reserve in a non pay status. Though he had become a company commander he felt constrained to leave the Guard in 1994 because of responsibilities of his command required more time than he had available. As a result of a CT Page 8100 combination of active and National Guard duty, he accumulated fourteen years credit toward the minimum of twenty years required for retirement eligibility. Consequently, Mr. Strong has no present entitlement to the future receipt of any pension or retirement benefits resulting from his service in the Armed Forces. During that portion of the marriage in which the plaintiff was active in the National Guard he kept, for his own use, any payments received for his weekend and extended periods of service.
Mr. Strong commenced his employment at Foxwoods in September of 1992 as a black jack dealer, interrupting this employment for active National Guard duty from November 1992 to March 1993 during which time he earned approximately thirteen thousand ($13,000) dollars attending an advanced officer's course at Fort Leonard Wood, Missouri. When he returned from National Guard duty he resumed his Foxwoods employment. Still involved directly in the casino's gaming activities, he has become a floor supervisor and believes that his continued employment outlook at the casino is bright. During the course of this trial the plaintiff received a small increase in his weekly compensation.
The defendant Francesca Strong is fifty six years old, having been born on July 11, 1939 in Italy. She moved to the United States when she was sixteen years old having left school after completing the third grade. While an intelligent and able person, Mrs. Strong does not read English well and she has little facility with numbers. Aside from the management of her rental properties and her operation of The Shed, both with considerable help from family members and a bookkeeper, the defendant has no significant earning capacity. The income she derives from these activities, however, does provide her with a comfortable life style.
Mrs. Strong was first married in 1960 to Joseph Sandamena with whom she had three children, who are all now adults. Her marriage to Mr. Sandamena was dissolved in 1978. The parties agreed, and the court finds, that the assets Mrs. Strong owned at the time of her marriage to the plaintiff were derived by her as a result of the marital dissolution agreement she entered into with Joseph Sandamena.
The principal focus of the parties' present dispute relates to the properties the defendant possessed at the time of the marriage as well as assets accumulated during its course. The CT Page 8101 plaintiff argues that he should receive a property settlement based, in the main, on his efforts to maintain and to improve these assets and to improve their profitability during the course of the marriage. Additionally, the plaintiff claims that there has been an increase in the defendant's estate during the marriage which he should share upon his departure from the relationship. The defendant claims, on the other hand, that all of her present estate was derived either before the marriage or from entitlement created before the marriage and that her premarital assets have not, in fact, appreciated during the course of this marriage. She further claims that the plaintiff's activities were not useful or productive in the preservation, maintenance or appreciation of assets during the course of the marriage. Additionally, the defendant claims that the plaintiff has been well compensated for his efforts during the marriage by the fact that he was provided nourishment and housing as well as gifts and a generous life style while the couple resided together. Analysis of these respective claims entails some consideration of the assets of the parties.
At the time Mr. and Mrs Strong were married, Mrs Strong was the sole shareholder in the Tobacco Shed, Inc., (The Shed) a Connecticut corporation which owns a drinking and (sometimes) eating establishment located at 103 Poquonnock Avenue in Windsor, Connecticut. When the plaintiff first met the defendant he rented an apartment from her located in the building which houses The Shed. Shortly after the plaintiff began his occupancy the defendant moved into the apartment with him. Thereafter, and throughout the course of the marriage the plaintiff did not pay rent to the defendant for residing, at any time, in any facility she owns. During the course of the marriage the plaintiff did introduce innovations and did assist in renovations to The Shed. He installed a computer-based inventory system. He prepared and submitted the paperwork to the State Liquor Control Commission for The Shed to obtain a Cafe license. The intended benefit of this shift was to relieve The Shed of the obligation to maintain a full service kitchen. Substantial renovations were made to the interior of the Shed space expanding the bar area as well as the kitchen area. For a while the kitchen and a seating area were leased to a succession of unsuccessful Chinese food operators. At present the kitchen is minimally used. While the plaintiff claims that his efforts with respect to The Shed enhanced its business, the court finds that his claims are not buttressed by the credible evidence. Federal Corporate Tax returns for the business years 1990 through 1993 indicate a generally declining gross CT Page 8102 income although evidence from The Shed's bookkeeper supports a finding that business has most recently slightly improved. While anecdotal evidence supports the plaintiff's claim that he attempted to "upgrade" The Shed's clientele by making it less hospitable to undesirable patrons, there is scant evidence that individuals whom the plaintiff found detrimental to the Shed were replaced by others whose patronage has been more profitable.
The plaintiff attempted to prove, through analysis of The Shed's purchase of liquor, wine, and beer for a certain time period, that the business income is greater than reported by the defendant. The court finds this evidence unpersuasive. Though the court notes with some concern that the defendant appears to trade help from her adult children for other economic benefits she confers upon them, a form of non-taxed barter, and the defendant appears to offer liquor at reduced prices under questionable circumstances in light of the State's anti happy hour restrictions, the court finds insufficient the proof in support of the plaintiff's claims that the defendant is underreporting The Shed's income. To the contrary, the court finds that The Shed's income has declined through most of the marriage, only recently enjoying some improvement. The court does not find that the plaintiff's activities with respect to the procurement of a care license, the physical renovations to the building, the cleansing of "undesirables" from the facility, or the insertion of computerization in the business record keeping contributed in any measurable way to the success of The Shed during the marriage or to its present state of economic health.
In addition to The Shed, the defendant owned a number of real properties when the parties were married. Additionally, she held a mortgage with payment obligations flowing in her favor. She was also involved in a real estate transaction prior to the marriage with a business associate, Peter Trudeau, with whom she sold a piece of property for approximately two hundred and forty thousand ($240,000) dollars. From this sum, the defendant realized approximately one hundred thousand ($100,000) dollars in two distributions, one half of the down payment of twenty four thousand ($24,000) dollars paid in July of 1987, and the balance of the purchase price, less expenses of sale, on August 12, 1988. At the time of the marriage, Mrs. Strong also had a savings account with a balance of approximately thirty thousand ($30,000) dollars.
When the defendant's marriage to Joseph Sandamena was CT Page 8103 dissolved in 1978 she received real estate and sole ownership of The Shed. Subsequently, on February 15, 1984 she sold one of the properties, known as the Italian Corner, taking back a mortgage from the purchasers in the amount of one hundred and fifty thousand ($150,000) dollars, calling for monthly payments of one thousand two hundred sixty ($1260.89) dollars and eighty nine cents for a term of three hundred and sixty months. Additionally, in August of 1990, Mr. Santamena sold a mortgage with an original principal obligation of forty thousand ($40,000) dollars to the defendant at a discounted price. At the time of the assignment the principal balance of this mortgage was approximately thirty eight thousand eight hundred and sixty six ($38,866) dollars with monthly payments of three hundred and twenty one ($321.85) dollars and eighty five cents payable through the end of the year 2016.
During the course of the marriage Mrs. Strong's adult daughter Frances and her (then) husband Peter executed a mortgage on property located on Spring Street in the Town of Windsor Locks in the total amount of eighty one thousand ($81,000) dollars in favor of the defendant. This instrument requires monthly payments to the defendant in the amount of four hundred forty nine ($449.93) dollars and ninety three cents through September 11, 2044. While the reasons for the execution of this mortgage did not emerge clearly during the hearing the court does find that since the defendant holds this mortgage it should have been listed as an asset on her financial affidavit. The court finds, however, that Mrs. Strong's daughter, now divorced from her former husband and a significant contributor to the management of The Shed, has made no payments to her mother on this indebtedness for a substantial time period and the defendant has no intention of seeking payment.
The defendant called Daniel Lynch of Windsor to testify as to the present fair market value of her real estate holdings. While Mr. Lynch does not have a bachelors degree, the court found him qualified to give the opinions he expressed by reason of his experience of several years in the real estate market as a broker and as a commercial and real estate valuator in the Windsor area as well as by reason of the numerous real estate and appraisal courses he has undertaken. In addition to its careful consideration of Mr. Lynch's testimony, the court viewed photographs of several of the properties, reviewed relevant financial exhibits and heard extensive oral testimony from both parties relating to the defendant's real estate holdings. CT Page 8104
The building known as 103 Poquonnock Avenue houses The Shed as well as three apartments, one of which was occupied by the Strongs for the first year of the marriage. All three apartments were rented during the hearing on this matter generating gross monthly rentals of approximately fourteen hundred and fifty ($1450) dollars. There are, however, frequent vacancies in these units causing rental income to be erratic. Joint Federal tax returns filed by the parties reflect gross annual rental from this building during the calendar years 1987 through 1992 to range from a high of eleven thousand four hundred ($11,400) dollars in 1990 to a low of two thousand and thirty ($2030) dollars in 1992. The defendant's separate return for calendar year 1993 reflects gross annual rental income from this building to be two thousand three hundred and seventy four ($2374) dollars. While the court finds that Mr. Strong did assist in the cosmetic maintenance of these apartments, the court accepts, as credible, the testimony of Daniel Lynch that this property is in a generally rundown condition in need of substantial repair. Additionally, the building suffers from a lack of suitable parking. The court finds the fair market value of this building to be one hundred and fifty nine thousand ($159,000) dollars.
The defendant owns and lives in a one family raised ranch home located at 38 Megan Drive in Windsor, Connecticut. The Strongs moved into this residence after initially living together in an apartment located above The Shed. The property was in a generally filthy condition when vacated by Mrs. Strong's son Thomas, requiring Mr. Strong to do significant clean up work. This property remains in poor physical condition. The interior ceilings show signs of leakage; the bathroom tiles are in disrepair; some flooring should be replaced. Though this home is located in a generally good residential area its poor cosmetic condition together with its need for interior improvements decrease its marketability. The court finds its fair market value to be one hundred and thirty eight thousand ($138,000) dollars. The court notes that this property was assessed by the Town at two hundred and seven thousand ($207,000) dollars in 1989, an assessment which has not been since revisited. And the court accepts as credible Mr. Lynch's testimony that this property, by appraisal utilizing a comparable sales approach, has decreased in value since the last Town revaluation. This property is burdened with a sixty thousand ($60,000) dollar home equity line of credit. When the line of credit was initiated by the defendant in 1989 the original loan amount was thirty five thousand ($35,000) CT Page 8105 dollars. Subsequently, in 1993, the line was increased to sixty thousand ($60,000) dollars. The defendant has utilized the funds made available through this line of credit for real estate rehabilitation as well as the payment of real property taxes. The balance of this indebtedness as of April 17, 1995 was approximately fifty seven thousand and six hundred ($57,600) dollars.
The defendant owns a two story residential home located at 12 Loomis Avenue in Windsor. This building, which is close to a car dealership and to a restaurant, sustained significant fire damage approximately nine years ago from which it has been renovated. While the interior is in reasonable condition, the property suffers from a lack of landscaping. Additionally its roof shingles are, in places, in need of replacement. The defendant's son Thomas lives in this property and pays no rent to her. Instead he does odd jobs for her and, from time to time, tends bar for her at The Shed without pay. The court accepts as credible the testimony of Mr. Lynch that the fair market value of this property is seventy-eight thousand ($78,000) dollars.
The defendant owns property located at 24 Dewey Avenue in Windsor which is occupied by the her son Michael who pays his mother monthly rent of approximately six hundred and forty ($640.00) dollars. This is a single family dwelling situated in a subdivision amidst homes generally newer in construction. This property is an older home with a substantial addition built during the course of the marriage which has enhanced its value. At the time the addition was built, the defendant took out a mortgage of approximately forty-five thousand ($45,000) dollars which was later paid off by the defendant from funds she received during the marriage as a result of a personal injury settlement. The court finds the fair market value of this property to be one hundred and twenty-six thousand ($126,000) dollars.
The defendant owns a five family building located at 1703 Poquonnock Avenue in Windsor. At the time of the parties' marriage this building housed four apartments which, with Mr. Strong's assistance, were later converted to five apartments. This is a large structure with multiple furnaces. It is in poor physical and cosmetic condition and has a history of non paying tenants whose behaviors might best be described as periodically requiring the note of the local police department. At present all five units in this building are rented with three out of five tenants meeting their rent obligations of five hundred and fifty CT Page 8106 ($550) dollars a month, and one tenant who has not paid rent for several months. Another tenant is "paying" rent by making physical improvements to the tenancy. Evictions from this dwelling are not an uncommon occurrence. Rental income history of this building, gleaned from a review of the parties' joint Federal Income Tax filings during the marriage years through 1992, indicate a range of gross rental receipts from a low of six thousand six hundred and twenty ($6620) dollars in 1988 to a high of nineteen thousand one hundred and ninety-eight ($19,198) dollars in 1991. For the calendar year 1993 the defendant reported gross annual rental income from this building in the amount of seven thousand nine hundred and forty-five ($7945) dollars. Mr. Lynch testified, and the court believes, that this property, in poor condition and proximate to commercial establishments, has minimal appeal for its income generating value. The court finds its fair market value to be one hundred and forty thousand ($140,000) dollars.
In 1992, the defendant purchased, in her name alone, a property known as 101 Poquonnock Avenue, Windsor, located next door to The Shed. This is a two story edifice with a store front and an office on the first floor and two apartments upstairs. At present one of the apartments is rented. Although the property was assessed by the town at two hundred and sixty-seven thousand ($267,000) dollars for the 1989 grand list, the defendant was able to purchase it in 1992 for one hundred and thirty-five thousand ($135,000) dollars. While Mr. Lynch testified to his belief that the property has a fair market value of ninety thousand ($90,000) dollars, substantially less than the purchase price paid by the defendant, his belief was not informed by any particular deterioration to the condition of the building since its purchase, but was based, in general, on the decline of real estate values in the geographic area and his belief that Mrs. Strong overpaid for the property. The court believes that the fairly recent purchase price of this building is a more accurate marker of its present value and therefore finds its present fair market value to the one hundred and thirty-five thousand ($135,000) dollars.
During the hearing the plaintiff claimed that funds utilized to purchase this building were generated during the course of the marriage. To the contrary, the defendant claimed, and the court finds, that she purchased this building largely with funds she realized from the sale of real estate she owned jointly with Mr. Trudeau before the marriage and with funds she possessed prior to CT Page 8107 the marriage.
The parties' federal income tax returns for the calendar years 1990 and 1992 have been audited by the Internal Revenue Service with the result that they have been assessed additional taxes and interest for each year. The discrepancy in each return was due to information relating to the defendant's income or expenses.
At the time of a marital dissolution neither party has an automatic right to income from the other; nor does either party have an entitlement to share in the estate of the other solely on the basis of marriage. Tobey v. Tobey, 165 Conn. 742 (1974);Weinstein v. Weinstein, 18 Conn. App. 622 (1989). In considering questions of property allocation as well as alimony the court is required to apply the criteria set forth in relevant statutory law. Graham v. Graham, 25 Conn. App. 41 (1991). The purpose of alimony is to provide support from one spouse to the other who has been abandoned, in legal contemplation, by the other. Stonerv. Stoner, 163 Conn. 345 (1972). An order of alimony is based on one spouse's continuing duty to provide support for the other.Martone v. Martone, 28 Conn. App. (1992), cert. granted in part,224 Conn. 909.
The guidelines for decision making on the issue of alimony are set forth as criteria in Connecticut General Statutes §46b-82. While the court is required to consider all of the statutory criteria, the weight to be accorded each factor is within the court's discretion. Roach v. Roach, 20 Conn. App. 500
(1990). In this case the court is mindful of the relative brevity of the marriage. Additionally, the court finds that the plaintiff is well employed and, by education, training and experience, capable of maintaining himself without assistance from the defendant. Reciprocally, while aware of the defendant's scant education and the limited scope of her employment potential, the court believes that the defendant, by reason of her income producing assets and innate abilities, is able to maintain herself without assistance from the plaintiff. Accordingly, the court finds that neither party is entitled to alimony from the other.
As to the distribution of assets, the exercise of the court's discretion in awarding any part of one's estate to the other is shaped by the criteria set forth in Connecticut General Statute46b-81. The court notes that the plaintiff came to the marriage CT Page 8108 with few assets. On the other hand, with the exception of her ownership of the property known as 101 Poquonnoclc Avenue in Windsor, all of the defendant's real estate holdings as well as her stock interest in The Shed were hers alone at the time of the marriage. While the court credits the plaintiff with his efforts to assist in the maintenance of these assets during the marriage the court does not find that the plaintiff's activities were any greater, in economic harvest, than the benefit of support and life style he received from the defendant during the marriage.
While each party has painted the other with broad strokes of misconduct, the court does not find the factor of fault critical in its analysis of each party's claims for relief. The plaintiff testified that the defendant was controlling, obsessively possessive, and jealous of his relationship with anyone or any interest beyond her reach. He testified that when he was preparing to leave for active duty with the National Guard at Fort Leonardwood, Missouri, Mrs. Strong took an overdose of medications resulting in her admission to the psychiatric unit of the Hartford hospital. He claimed that his wife's conduct was, in essence, a manipulation which may have gotten out of hand. He also testified that he was sued by the Hospital's counsel for this expense. Under the circumstances of this action, the court believes the balance of this indebtedness should be borne by the defendant.
For her part, the defendant claimed that she could no longer trust the plaintiff after an incident in 1989 when the plaintiff left home, withdrew twenty-five hundred ($2500) dollars from the bank, and stayed with a male friend for an evening at the East Hartford Ramada Inn. The defendant learned of the plaintiff's whereabouts when he called her in the morning, missing his pants, his friend, and his funds. While this 1989 episode is anecdotal evidence that the bloom of the marriage had well faded by 1989, the court draws no inference from this event that there was anything improper in the plaintiff's relationship with his male friend of several years. The plaintiff testified that this sojourn was one of at least three separation episodes when he left the defendant because he could not tolerate her behavior toward him. The court takes this claim as further evidence of the erosion of the marital relationship without attributing fault to one party more than the other. The court believes that the ultimate separation of the parties in the summer of 1993 was the consequence of a gradual deterioration of a marital relationship never firmly anchored at the outset. CT Page 8109
At the time the plaintiff moved from the defendant's home, he took a cash advance of three thousand ($3000) from a joint visa card. Additionally he removed some sound equipment and records from The Shed and jewelry which had been purchased for him during the marriage by the defendant, including a Rolex watch purchased by the defendant in 1989 for approximately eight thousand ($8000) dollars. Shortly before his departure the plaintiff traded in his truck for a new motor vehicle, utilizing, as part payment, funds he had received for his National Guard service. During the marriage the plaintiff purchased a number of computers for personal as well as business use. The plaintiff is in possession of one computer purchased at Sears and seeks ownership of a second computer, a 486 computer and fax machine, which he utilized during the marriage. The defendant has no familiarity with computers. In addition to the computer the plaintiff has requested the return of certain other items of personal property.
Based on all the evidence adduced at the hearing and in light of applicable statutory and decisional law the court enters the following orders:
A decree may enter dissolving the marriage of the parties on the grounds that it has broken down irretrievably with no prospects for reconciliation.
No alimony is awarded to either party.
Each party shall be entitled to ownership of the assets each possesses with the exception that the plaintiff shall be entitled to possession and ownership of the following items within the possession of the defendant:
 The Computer (486DX) and Laser Printer together will all software which had been loaded into the computer
The FAX Machine
 Title to the 1989 Oldsmobile Phantom Motor Vehicle in his possession
The plaintiff's books, personal certificates and documents
The plaintiff's clothing CT Page 8110
 Desk, chair and bookshelves that were in the plaintiff's office at 101 Poquonnock
 Exercise equipment (weights and treadmill) purchased while the parties resided together
 The white-framed painting of a country setting given to the plaintiff by his mother
The plaintiff's personal pool cues and case
The cherry roulette table
The plaintiff shall be entitled to retrieve these items from the defendant upon reasonable advance notice. Any such items not sought by the plaintiff on or before September 1, 1995, shall be considered abandoned by the plaintiff and shall become the property of the defendant.
The defendant shall pay any deficiency, interest and penalties due to the Internal Revenue Service on account of the parties joint Federal Income Tax Returns filed for calendar years 1990 and 1992 and shall hold the plaintiff harmless therefrom.
Each party shall pay the debts and/or liabilities each has incurred during the course of the marriage and shall hold the other harmless therefrom except that:
 the defendant shall pay the balance of the indebtedness owed to the Hartford Hospital and shall hold the plaintiff harmless therefrom
 the plaintiff shall assume and pay the balance of the indebtedness on the joint Visa card, and shall hold the defendant harmless therefrom
 the plaintiff shall be forgiven the obligation to repay the defendant for any funds advanced to him in conjunction with his operation of the consignment shop during the course of the marriage.
No counsel fees are awarded to either party.
In formulating these orders the court has carefully considered applicable provisions of Chapter 815j of the Connecticut General Statutes. CT Page 8111
The plaintiff shall prepare the judgement.
Bishop, J.