ELAINE F. MILBAUER *v.* ALAN J. MILBAUER
(AC 18149)

Foti, Landau and Dupont, Js.

---

Argued April 28—officially released July 27, 1999

*Emily J. Moskowitz,* with whom, on the brief, was *Robert D. Zaslow,* for the appellant (plaintiff).

*Carol Widing,* for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, Elaine F. Milbauer, appeals from the judgment of the trial court dissolving her marriage to the defendant, Alan J. Milbauer. On appeal,

the plaintiff claims that the trial court improperly (1) modified, retroactively, an order of alimony pendente lite, (2) limited her permanent alimony award to a term of ten years, (3) based the duration of her alimony award on her future right to social security benefits, (4) distributed an asset to her that neither she nor the defendant considered part of the marital estate and (5) invalidated a mortgage of record. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. The parties were married on August 23, 1964, in Bridgeport. Two children were born of the marriage, both of whom have reached the age of majority. At the time of trial, the plaintiff was fifty-five years of age and the defendant was fifty-six years of age.

The plaintiff has taken various courses since graduating from high school, including accounting, statistics and real estate. At the time of the parties' marriage, the plaintiff was employed and continued to work outside the home until she became pregnant with the parties' first child. Thereafter, the plaintiff remained at home with the children while they were very young and then returned to outside employment in 1976. For the past eight years, the plaintiff has worked for the town of Somers as an administrative assistant to the first selectman. During her employment with the town, the plaintiff's salary has increased from $17,000 per year to its present level of $24,000 per year.

During the early years of the marriage, the defendant worked part-time while he completed his college degree in business administration and marketing. Thereafter, in the mid-1970s, he became a manufacturer's representative in the furniture sales business. In April, 1994, the defendant was informed of a change in his sales area

and his commission arrangement, which removed certain profitable geographic areas from his territory. While the territory the defendant covers has been enlarged, he has lost large retail furniture stores as accounts and his commission for dealing with certain remaining accounts has been reduced. As a result, since 1994, the defendant's income has decreased. The defendant's taxable income for the years 1994, 1995 and 1996 was $43,883, $32,184 and $30,847, respectively.

On September 13, 1993, the plaintiff filed an action seeking a dissolution of her marriage to the defendant. On November 15, 1993, the parties entered into a pendente lite stipulation, which was then made an order of the court, that provided, inter alia, that the defendant would pay the plaintiff alimony pendente lite in the amount of $500 per week. On June 20, 1994, the defendant filed a motion to modify alimony pendente lite. In it, the defendant claimed that there had been a substantial change in his circumstances that prevented him from continuing to pay the agreed upon sum of $500.

The defendant, however, did not pursue his motion when filed, or at subsequent dates when it was reclaimed. Instead, the defendant unilaterally reduced the amount of alimony pendente lite he was paying to the plaintiff. In 1994, the defendant failed to pay any alimony to the plaintiff. In 1995, the defendant paid the plaintiff $9000. In 1996, the defendant paid the plaintiff $4400. Finally, in 1997, the defendant paid the plaintiff $1275, through April 27 of that year. All of those amounts were in lieu of the $26,000 per year the defendant was required to pay.

On August 29, 1997, the trial court rendered judgment dissolving the parties' marriage, finding that it had broken down irretrievably. In so doing, the trial court found that the plaintiff had been unfaithful to the defendant and that this unfaithfulness contributed to the ultimate

failure of the marriage. In addition, the trial court ruled on the defendant's motion to modify and made findings with respect to issues of permanent alimony and the disposition of marital assets. Additional facts will be set forth where relevant to the issues on appeal.

I

The plaintiff first claims that the trial court improperly modified, retroactively, an order of alimony pendente lite. We disagree.

In its memorandum of decision, the trial court ruled on the defendant's motion to modify alimony pendente lite. In so doing, the trial court found that a substantial change in the defendant's circumstances had occurred since the date of the original pendente lite order "when the defendant's business arrangements were altered to decrease his more profitable business accounts while not lessening his travel requirements." While the trial court noted that it did "not favor self help," a reference to the defendant's unilateral reduction in his alimony payments, it nonetheless found, "as credible, the defendant's claim that he did not pursue his motion to modify in a timely manner because he was engaged in negotiations with [the plaintiff] and because he believed that the plaintiff had decided to accept his lower payments in satisfaction of the court order."

The trial court then granted the defendant's motion to modify and ruled that effective June 20, 1994, the date of the defendant's original motion to modify, the defendant was ordered to pay the plaintiff, as alimony pendente lite, the sum of $125 per week, less credits for the amounts the defendant had paid. On appeal, the plaintiff does not argue that the change in the defendant's circumstances did not justify a modification of the alimony pendente lite. Instead, the plaintiff claims that a "retroactive" modification of an alimony pendente lite award is not authorized by either case law,

or by statute, and that the trial court's order was, therefore, improper.

We note initially that while the trial court chose to include its modification of the alimony pendente lite award in its final memorandum of decision, modification at that time was not, in and of itself, improper. We recognize that "[p]endente lite orders, by their very definition, are orders that continue to be in force during the pendency of a suit, action, or litigation. Ballentine's Law Dictionary (3d Ed.) 1969. Pendente lite orders necessarily cease to exist once a final judgment in the dispute has been rendered because the purpose is extinguished at that time. *Connolly* v. *Connolly*, 191 Conn. 468, 479, 464 A.2d 837 (1983). [Generally] *[p]endente lite orders do not survive the entry or rendition of judgment. Tobey* v. *Tobey,* [165 Conn. 742, 745, 345 A.2d 21 (1974)]; *LaFaci-Zitzkat* v. *Zitzkat,* 19 Conn. App. 805, 806, 562 A.2d 527 (1989)." (Emphasis added; internal quotation marks omitted.) *Febbroriello* v. *Febbroriello,* 21 Conn. App. 200, 206, 572 A.2d 1032 (1990).

It is clear from an examination of the record in this case, however, that two separate hearings were held and that those hearings were conducted by the same judge *sitting as two separate courts*. The trial court initially took evidence regarding the defendant's motion to modify the pendente lite award and *then* moved on to the final hearing concerning the ultimate dissolution of the parties' marriage.[1] So, despite the fact that the

---

[1] The defendant has pointed to several examples in the record and transcripts that make it clear, to this court, that the trial court held two separate hearings with two, distinct purposes. The first hearing concerned the modification of the defendant's obligation to pay the plaintiff alimony pendente lite. The second hearing concerned the final dissolution of the parties' marriage. In fact, at the end of the presentation of evidence for purposes of the defendant's motion to modify, the following colloquy took place:

"[Defendant's Counsel]: Your Honor, I have no further questions.

"The Court: You may step down, Mrs. Milbauer.

"The Court: Attorney [for the plaintiff]?

trial court included, in the text of its final decision, the modification of the pendente lite award, it is clear that the trial court in this case sat both as a pendente lite court and as a final court of dissolution and was not precluded, therefore, from entering orders as to both the alimony pendente lite award and the final dissolution. We now turn to the merits of the plaintiff's claim.

Under General Statutes § 46b-86 (a), "[u]nless and to the extent that the decree precludes modification, any . . . order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ." Prior to 1990, the long-standing rule of law was that a court's order modifying alimony could not be retroactive. See *Vickery* v. *Vickery*, 25 Conn. App. 555, 559, 595 A.2d 905, cert. denied, 220 Conn. 919, 597 A.2d 344 (1991), and cases cited therein. In 1990, however, the Connecticut legislature passed an amendment to § 46b-86 (a) that provided, inter alia, that "[n]o order for periodic payment of *permanent* alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50." (Emphasis added.) Public Acts 1990, No. 90-188, § 1. This amendment permitted the retroactive modification of alimony awards back to the date of the motion to modify.[2]

"[Plaintiff's Counsel]: Are we entering the—

"The Court: I gather we're done with the [pendente lite issues], and moving forward on the marital dissolution, correct?

"[Defendant's Counsel]: Yes, Your Honor."

[2] If the trial court decides that a party is entitled to an increase in an award of alimony, "the court's order should be effective as of the date of service of notice of the motion . . . so as to afford the [party] the benefit of the modification from the time when it was originally sought. General Statutes § 46b-86 (a)." *Bartlett* v. *Bartlett*, 220 Conn. 372, 384, 599 A.2d 14 (1991).

The plaintiff argues that because there is no specific mention in § 46b-86 (a) of the court's authority to modify retroactively *pendente lite* awards, and because prior to the 1990 amendment courts uniformly interpreted § 46b-86 (a) as precluding all retroactive modifications, the authority to modify retroactively pendente lite awards simply does not exist. We do not agree, however, that the above amendment either removed from, or conferred upon, pendente lite courts the inherent authority to modify retroactively alimony pendente lite orders.

In support of her argument, the plaintiff cites *Sanchione* v. *Sanchione*, 173 Conn. 397, 404, 378 A.2d 522 (1977); *Elliott* v. *Elliott*, 14 Conn. App. 541, 544, 541 A.2d 905 (1988); *Trella* v. *Trella*, 24 Conn. App. 219, 221, 587 A.2d 162, cert. denied, 219 Conn. 902, 593 A.2d 132 (1991); and *Wolf* v. *Wolf*, 39 Conn. App. 162, 167, 664 A.2d 315 (1995), for the proposition that alimony pendente lite orders are not modifiable retroactively absent express statutory authorization. An examination of these cases, however, discloses that they are distinguishable from the present case. The cases cited by the plaintiff all deal, specifically, with the retroactive modification of alimony awards, either permanent or pendente lite, by the trial court *at or after the time of dissolution*. None deals directly with the retroactive modification of alimony pendente lite orders by the pendente lite court itself prior to the dissolution judgment.

"The purpose of alimony pendente lite is to provide support to a spouse who the court determines requires financial assistance pending the dissolution litigation and the ultimate determination of whether that spouse is entitled to an award of permanent alimony." *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 639–40, 561 A.2d 443 (1989). Prior to the time of dissolution, a pendente lite court should not be prevented from

modifying its rulings, either prospectively or retroactively, to fulfill that purpose. While the present case concerns the retroactive *reduction* of alimony pendente lite, to rule that retroactive modifications are not permitted would prevent a pendente lite court from retroactively increasing the amount of support, at least back to the date of the motion to modify, when that increase would be essential to "provid[ing] support to a spouse who the court determines requires financial assistance pending the dissolution . . . ." Id., 639. We find, therefore, that the trial court, sitting as it did as a pendente lite court, did not abuse its discretion in modifying the pendente lite award back to the date of the defendant's motion to modify.

II

The plaintiff next claims that the trial court improperly limited her alimony award of $80 per week to a period of ten years. We do not agree.

Under General Statutes § 46b-82, "[a]t the time of entering the decree [of dissolution], the Superior Court may order either of the parties to pay alimony to the other . . . . In determining whether alimony shall be awarded, *and the duration and amount of the award,* the court . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." (Emphasis added.)

"As in the distribution of marital assets, the trial court is afforded broad discretion in making awards of alimony. *Askinazi* v. *Askinazi,* 34 Conn. App. 328, 330–31, 641 A.2d 413 (1994). Although this discretion must be exercised after consideration of the factors enumerated

in General Statutes § 46b-82, we will indulge every reasonable presumption in favor of the correctness of the trial court's action . . . . Id., 331." (Internal quotation marks omitted.) *Wolf* v. *Wolf*, supra, 39 Conn. App. 168. "The trial court does not have to make a detailed finding justifying its award of time limited alimony. . . . Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award." (Citation omitted.) *Ippolito* v. *Ippolito*, 28 Conn. App. 745, 751, 612 A.2d 131, cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992).

Here, in limiting the duration of the alimony payments to a period of ten years, the trial court noted that "while the court has determined that the primary cause of the marital failure has been the plaintiff's unfaithfulness, cause of the dissolution is simply one of several factors for the court to consider. Cf. General Statutes § 46b-82. While considering all the statutory factors, the court finds particularly relevant the length of the marriage, the ages of the parties, their respective educations, work history, work prospects, actual earnings, and the distribution of assets as set forth infra. The court notes that the plaintiff, while she does not have a college education, is a skilled and experienced bookkeeper and office administrator. The court is mindful, however, that the longevity of her present employment is dependent on ever shifting political winds. Untenured in her position, the plaintiff risks the loss of her employment at each municipal election. On the other hand, the court finds that the defendant's business climate changed for the worse in 1994, leaving him with a less profitable market, and lower prospects for remuneration in the future. For the defendant, a furniture salesperson since 1976, the wholesale and distribution of furniture has been his economic life blood for more than two decades. His opportunities for alternate employment are minimal. On the basis of all the evidence adduced

at the hearing, and mindful of applicable statutory and decisional law, the court orders the defendant to pay to the plaintiff weekly alimony in the amount of eighty ($80) dollars for a period of ten years, the outside term of which shall not be subject to modification by extension."

As noted previously, the trial court considered not only the primary cause of the marital failure, i.e., the plaintiff's unfaithfulness, but the amount and sources of income, vocational skills and employability of the parties. Given the detailed memorandum of decision and the trial court's explicit recognition that it considered the factors contained in § 46b-82, we cannot say that the trial court abused its discretion in making this award. See *Wolfburg* v. *Wolfburg*, 27 Conn. App. 396, 399, 606 A.2d 48 (1992).

### III

The plaintiff next claims that the trial court improperly based the duration of her alimony award on her future right to social security benefits. We disagree.

In its memorandum of decision, after the trial court enunciated the specific factors it took into account in determining the amount and duration of the plaintiff's alimony award, the trial court noted that "[b]y this time[3] both parties shall be eligible for the receipt of Social Security, and the plaintiff, having been married to the defendant for the requisite time, shall be entitled to the receipt of social security benefits based on the defendant's earnings history."

In her brief, the plaintiff asserts that "basing a term of alimony upon Social Security benefits is error" because

---

[3] At the time of the trial court's memorandum of decision, the plaintiff and the defendant were fifty-five and fifty-six years of age, respectively. The trial court's use of the phrase "[b]y this time" is an apparent reference to the plaintiff's and the defendant's reaching the ages of sixty-five and sixty-six, respectively. Again, the duration of the alimony award was ten years.

there is no legislative authority for doing so and because the trial court is prohibited from basing its order on a "mere expectancy." Because we do not agree with the plaintiff's characterization of the basis for the trial court's award, we need not reach, directly, the merits of the plaintiff's argument.

While we acknowledge that the trial court may have taken into consideration the plaintiff's and defendant's eligibility for social security benefits in arriving at the duration of the plaintiff's alimony award, we are not convinced, as the plaintiff suggests, that the award was, in fact, "based" on this factor. As explained in part II of this opinion, the trial court actually based its finding on the cause of the marital failure, the amount and sources of the parties' income, as well as their vocational skills and employability. We have previously found that the trial court's determination did not amount to an abuse of discretion.

IV

The plaintiff next claims that the trial court improperly distributed an asset to her that neither she nor the defendant considered part of the marital estate. We disagree.

On May 11, 1990, the plaintiff's parents transferred their interest in real estate at 23 Winchester Drive, Shelton, to the plaintiff and her sister, Diane Gluck, as tenants in common. At the commencement of this dissolution action, the plaintiff retained her one-half interest in this property, which had a fair market value of $185,182, subject to a life interest in the plaintiff's mother with a value of $64,000. As a result, the plaintiff's one-half interest in this asset was valued at $60,591. Notwithstanding the freeze order dated November 15, 1993, on August 26, 1996, the plaintiff quitclaimed her interest in this property to her sister for no consideration.

In its memorandum of decision, the trial court found that "[i]n making its orders for the disposition of property, the court has taken into consideration the plaintiff's wilful violation of the court's order prohibiting any such transfers. . . . The plaintiff's interest in the property was a subject of the court's pendente lite order proscribing such transfers. . . . The plaintiff. quitclaimed this property to her sister for no consideration merely to avoid subjecting it to the court's jurisdiction in conjunction with this marital dissolution. As a consequence, the court has considered the value of the plaintiff's interest in this property prior to its transfer to the plaintiff's sister in formulating its property disposition orders."

On appeal, the plaintiff argues that because the defendant did not include the Shelton property in his calculation of the marital assets in his proposed orders, and because this property was not sought by the defendant through his pleadings,[4] the defendant "specifically excluded and withdrew any claim to the interest in the plaintiff's mother's house." According to the plaintiff, this failure of the defendant to seek an interest in the property rendered it "not in issue" and acted as a waiver of any claim to the property. Nevertheless, we conclude that the value of the asset in question was properly considered by the trial court in formulating its property distribution orders.

Generally, "[t]he court has jurisdiction to order a transfer of property and to order alimony if the parties

---

[4] The defendant argues that he filed a request to amend his cross complaint in which he averred that "[t]he Plaintiff quit claimed real estate on August 2, 1996, and contrary to Orders entered November 15, 1993, thus attempting to remove property from her estate that otherwise would have been considered in the Court's determination of alimony and property division," thus placing the disposition of this asset properly before the trial court. We note, however, that it appears from the record that the plaintiff's objection to the defendant's request to amend was sustained by the trial court.

request such orders in the prayer for relief contained in the complaint or cross complaint. *Tsopanides* v. *Tsopanides*, 181 Conn. 248, 249–50, 435 A.2d 34 (1980)." *Sweet* v. *Sweet*, 190 Conn. 657, 661, 462 A.2d 1031 (1983). Our Supreme Court has previously held, however, that "a party to a dissolution action with notice, *however imprecise*, that a property distribution may be considered by the court is charged with notice of the trial court's authority pursuant to General Statutes § 46b-81, which provides that when entering a dissolution decree a court 'may assign to either the husband or wife all or any part of the estate of the other . . . without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.' " (Emphasis added.) *Connolly* v. *Connolly*, supra, 191 Conn. 476.

In her complaint, the plaintiff requested that the trial court award her "[s]uch other, and further, relief as to the court appears just and equitable under all the circumstances." In the defendant's answer and cross complaint, he also requested "[s]uch other and further relief as the court deems just and proper." This court has previously found similar language in a prayer for relief as "invit[ing] the trial court to weigh the claims *and assets* of each party in making its awards." (Emphasis added.) *Ferrucci* v. *Ferrucci*, 11 Conn. App. 369, 374, 527 A.2d 1027, cert. denied, 205 Conn. 805, 531 A.2d 935 (1987) (claim for " '[s]uch other and further relief as law and equity may provide' " sufficient to put all assets in issue).

Further, in *Lord* v. *Lord*, 44 Conn. App. 370, 374, 689 A.2d 509, cert. denied, 241 Conn. 913, 696 A.2d 985 (1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1065, 140 L. Ed. 2d 125 (1998), in response to a claim that an award of lump sum alimony had "no factual basis" because the only language purportedly referring to alimony in the plaintiff's prayer for relief was "such other

relief as the court deems appropriate," we noted: "We have often stated that the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances that arise out of the dissolution of a marriage. *Tessitore* v. *Tessitore*, 31 Conn. App. 40, 45, 623 A.2d 496 (1993). These equitable powers give the court the authority to consider all the circumstances that may be appropriate for a just and equitable resolution of the marital dispute. . . . *Sands* v. *Sands*, 188 Conn. 98, 105, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983). The trial court may award alimony to a party even if that party does not seek it *and has waived all claims for alimony.* Id., 102 (court free to reject stipulation of parties for no alimony as unfair and inequitable and to award $1 per year alimony). A trial court may award alimony as part of the court's general equitable power. *LaCroix* v. *LaCroix*, 189 Conn. 685, 689, 457 A.2d 1076 (1983)." (Emphasis added; internal quotation marks omitted.)

Finally, we note that the plaintiff was charged with notice that under § 46b-81, the trial court was specifically authorized to assign the property to, or consider the property of, either party in formulating its property distribution orders. See *Hodge* v. *Hodge*, 178 Conn. 308, 315–16, 422 A.2d 280 (1979). We find, therefore, that despite the defendant's failure to include an explicit reference to the Shelton property in either his cross complaint or his proposed orders, the trial court was not deprived of its inherent authority to factor the value of that property into its property distribution orders.

V

The plaintiff finally claims that the trial court improperly invalidated a mortgage of record. We disagree.

In its memorandum of decision, the trial court took into consideration a mortgage executed by the plaintiff

in favor of her mother in determining the property division of the parties. The mortgage was for $50,000 and was filed against the plaintiff's home at 200 Billings Road, Somers. The plaintiff argues that the trial court improperly "entered its final orders without giving any credence or validity to the mortgage" and, as a result, "improperly skewed" those orders by disregarding the plaintiff's indebtedness. The plaintiff characterizes the trial court's action as an invalidation of a valid mortgage of record pursuant to General Statutes § 49-13. We do not subscribe to that characterization.

In discussing the mortgage, the trial court noted that "[w]ith respect to the 200 Billings Road property, the court finds that its fair market value is [$120,000], and it is subject to a first mortgage in the amount of [$90,000]. While there is documentary evidence to support the existence of a debt owed by the plaintiff to her mother in the amount of [$50,000], and a mortgage note and deed affirming this debt, it is the court's view that the plaintiff's mother forwarded funds to the plaintiff in conjunction with her purchase of this property partly from funds held jointly by the plaintiff and her mother, and partly as a gift from the plaintiff's mother. The court finds the existence of the note and mortgage from the plaintiff to her mother to be a disingenuous effort to mask this act of generosity on the part of the plaintiff's mother, and duplicity on the part of the plaintiff."

In this case, the plaintiff has pointed to no evidence that suggests that the trial court actually invalidated the mortgage pursuant to § 49-13, and we can find nothing in the record that suggests that the mortgage has been rendered otherwise unenforceable. The plaintiff appears to concede as much when she argues that the trial court, "by not according the face value of the debt into the marital asset division, *for all intents and purposes,* invalidated the mortgage of record without any supporting testimony or documentary evidence."

(Emphasis added.) We view the trial court's action, therefore, not as an invalidation of the plaintiff's mortgage, but simply as a valuation of the Billings Road property.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties at the hearing. . . . *McPhee* v. *McPhee*, 186 Conn. 167, 177, 440 A.2d 274 (1982) . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . *Sands* v. *Sands*, [supra, 188 Conn. 101]. Accordingly, it is only in rare instances that the trial court's decision will be disturbed." (Citation omitted; internal quotation marks omitted.) *Simmons* v. *Simmons*, 244 Conn. 158, 174–75, 708 A.2d 949 (1998).

Here, we cannot say that the trial court abused its discretion in failing to accord weight to the purported indebtedness that the plaintiff asserts is evidenced by the mortgage in question. "In a case that is tried to the court, such as the present case, the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony." (Internal quotation marks omitted.) *Clarke* v. *Commissioner of Correction*, 43 Conn. App. 374, 386, 682 A.2d 618, appeal dismissed, 249 Conn. 350, 732 A.2d 754 (1999). We will not disturb, therefore, the trial court's determination that the mortgage was simply an attempt to maximize the appearance

of the plaintiff's debt and, thus, to secure for herself a more favorable property distribution.

The judgment is affirmed.

In this opinion the other judges concurred.