[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was commenced by writ summons and complaint dated April 6, 1999 and returnable to this court on May 4, 1999. The parties to this nearly 20-year marriage were married in Bedford, New York on August 1, 1982. They have two minor children, Shaina L. Fogel, born January 5, 1990, and Samantha T. Fogel, born August 13, 1992. There was some testimony to indicate that the older child suffers from asthma and uses an inhaler. The parties have been separated since late 1999 or early 2000, and the plaintiff ("wife") resides in the marital home at 29 Twin Oaks Lane Wilton, Connecticut. The defendant ("husband") resides in a CT Page 3745 rented condominium at Village Walk, also in Wilton. The parties share the parenting responsibilities, so that each child spends significant time with both parents.
The wife is 40 years old and describes her health as good. She has two years of business school, has been employed as full time part-time capacity throughout most of the marriage with some time off when the children were very small. Her jobs include a stint at her husband's hardware store. She went back to work after the youngest child began kindergarten, and she is currently employed at Mercator Software in Wilton where she works 40 hours per week in the accounts payable department. Her salary is approximately $34,000 per year. She has group health insurance and participates in a 401(K) plan.
The husband is 45 years old and describes his health as very good. He has a high school education and has been employed steadily at Karp's Hardware, a 75-year-old family business started by his grandfather. He has a one-half interest in the business with his brother who also is employed there. Currently he earns $75,000 per year and is eligible for a bonus which has been paid in most years. By contrast, his brother earns $100,000 a year as his equal partner. The husband testified that he has taken a pay cut for the duration of the matrimonial action "in fairness to his brother," since it has been a distraction from his job. Moreover, he did testify that he expected his compensation would be raised to an amount equal to that of his brother's following the end of the divorce proceedings. The court concludes that he voluntarily reduced his income in hopes of reducing his ultimate alimony and support obligation. In addition, the husband has received bonuses in the past, some of which were "lent" back to the company. He participates in a 401(k) plan, has medical coverage, and at least one-half of his automobile expenses paid by the firm.
There is some dispute as to what assets the parties brought to the marriage. The wife testified that there were virtually none save the husband's small interest in Karp's Hardware. The husband testified that he had $20,000 in savings and two or three shares of Karp's. In addition, he said that the parties had some joint savings from the period that they lived together before the marriage.
The case was tried over the course of seven non-consecutive days. At the beginning of the trial the parties stipulated as to the value of the family home in Wilton as well as the terms of a custody visitation agreement entered into by them dated November 13, 2000, and which was made an order of the court. The Wilton home was the third home of the parties. It was purchased in 1989 for $375,000 with the net proceeds of the previous home and a mortgage in the amount of $160,000 (later CT Page 3746 refinanced). Their first home in New York was purchased with the help of a gift of $5,000 from the husband's family.
The principal bone of contention centers on the husband's interest in Karp's Hardware. Both parties hired experts to prepare a report and testify in court regarding the valuation. In addition, and collaterally thereto, a substantial amount of testimony was elicited regarding the husband's compensation, not only as to the amount, but also regarding the arrangement that he has with the company for reimbursement for company expenses. He testified at some length with regard to his practice of purchasing gifts, both large and small, for various customers. When recounting the nature of the various items, the court could not help but be struck by the fact they were for the most part household and electronic items, some of which were very expensive. While they court has no doubt that gifts are given on occasion to customers and suppliers (e.g., holiday gifts), the court finds the husband's testimony to have been less than credible on this score, and finds the "reimbursements" to in fact be disguised compensation. As to the valuation of the business, based upon the testimony of the parties and the experts, there is no doubt but that it is certainly a "going concern." In fact, the two brothers appear to work well in tandem and seem well on their way to making the business more competitive and profitable. In the division of labor, the husband is responsible for most of the sales while his brother handles the day to day running of the store. The husband testified with regard to the fact that the business is in the process of being moved to a new location in Stamford and all of the costs incident to that move. The testimony of John Leask indicated that Karp's profitability is in fact higher compared to similar stores. He described the management as good, and said that the store is one of the stronger independent hardware stores. Applying a modest adjustment, he was of the opinion that the value of the husband's shares was $324,000. On the other hand, Edward Axelrod applied substantial minority and marketability discounts in arriving at a valuation of $158,000.
The parties have few other assets of any significance other than some IRAs. They have, however, amassed a mountain of debt since the beginning of this action, consisting of attorney fees and credit card purchases.
As to the breakdown of the marriage, the wife testified that they had "a good social life" when they met in 1981, and that this included drinking and the use of cocaine. She further testified that her husband was a workaholic who spent very little time with the family, and that he dealt cocaine on the side. Aside from her testimony, no credible evidence was introduced regarding this alleged illegal activity, therefore the court did not accord much weight to this testimony. By 1993, the wife testified that the marriage was coming unraveled, and indicated that the CT Page 3747 parties had no communication or intimacy for years. She said her husband was "too busy to talk about things." For his part, the husband felt he was working for the family, and that he needed to put in the hours that he did in order to make the business a success. He referred to the "agreement" that they had reached earlier whereby she would be a "stay at home mom" and he would be the breadwinner. The wife testified that she began drinking heavily and sought help at the Greenwich Hospital; entered rehab there for a 28-day period; and that she has been sober for 10 years. However, the court believes that she has struggled with alcohol for a good portion of the marriage, and, in fact, she admits to having had a few drinks subsequent to her hospital admission when the husband was out of town. The wife testified that she sees a counselor and a psychiatrist. She said she felt "very deserted" and that her husband was "not mentally or emotionally there." However, she admits that the husband did support her in her recovery. For his part, the husband describes this period of their marriage as "a horrible time."
The catalyst for the ultimate breakdown of the marriage occurred on November 5, 1998, when the husband came back from a trip, and the wife told the husband that she did not love him anymore. He did not seem to be able to get over this. He indicated he wanted to reconcile but she did not. Later, in April 1999, the husband found out for the first time that the wife had been seeing another man. She told him that in October 1998 she had met another person and had established a relationship with him. The husband moved into the basement for a short time, however, he did move out at the wife's urging several months later in late 1999 or early 2000. He finally came to accept the fact that the wife was not going to reconcile.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that while ample evidence exists that both parties have contributed to said breakdown, the court finds that the husband's emotional remoteness, as well as the wife's long struggle with alcohol were significant factors in the breakdown of the marriage. CT Page 3748
4. That the parties participated in the Mediation Program with the Family Services Unit in Stamford; that the Family Services Unit filed a mediation report dated April 18, 2000, which report outlined the agreement of the parties regarding custody and visitation; and that on November 13, 2001, the parties stipulated and agreed in writing (#145) that the terms of said report would be incorporated into the final decree of this court.
5. That the wife has been employed outside the home for a considerable time during the marriage; that she currently earns $34,000 per annum.
6. That the testimony and evidence clearly demonstrate that the husband and his brother earned the same income from their employment; that his level of income is within his control; that the husband reduced his income during the pending action; that it will increase to a level comparable with that of his brother at the conclusion of the action; that the husband's has a base earning capacity of $100,000 per annum; and that it is equitable and appropriate that any financial orders be based upon his earning capacity. Hart v. Hart, 19 Conn. App. 91, 94-95 (1989).
7. That based upon the statutory factors, including the age, education, earnings, and work experience of the wife, a time-limited award of alimony is appropriate. Milbauer v. Milbauer, 54 Conn. App. 304,312-315 (1999).
8. That throughout the marriage, until their separation, both parties made significant contributions to the acquisition, maintenance, and preservation of the family assets, including the real estate; that the court has accorded, significance weight to the fact that, in addition to her role as homemaker, the wife has been employed on a full or part-time basis outside the home for a large portion of the marriage; and that it is equitable and appropriate that the court consider these factors, as well as the fact that the husband is in a better position than the wife to acquire assets in the future.
9. That per Stipulation (#173) dated August 15, 2001, as on file with the court, the fair market value of the jointly-owned real estate at 29 Twin Oaks Lane, Wilton, Connecticut is $450,000; that there is a mortgage on the property with a balance of approximately $165,000; and that there is equity of approximately $285,000.
10. That the husband owns twelve (12) shares of a family-owned business entity known as Karp's Hardware, Inc.; that his ownership interest is an equal (50%) share with his brother David; that no credible evidence was offered to the court that the business was currently listed for sale or CT Page 3749 that either or both owners intended to sell their interests therein at any time in the in the near future; that no credible evidence was offered to the court that an involuntary sale or transfer of the business or any portion thereof would result from the filing of this action; that the husband's interest therein is a marital asset; that in arriving at the value of the business for purposes of equitable division of the marital estate that it is equitable and appropriate that no minority or marketability discount be applied to the valuation of the husband's shares; and that the fair market value of the husband's interest in Karp's Hardware, Inc. is $300,000.
11. That each party has sought relief in the form of the maintenance of life insurance by the other; that no credible evidence was introduced demonstrating the existence of any policy or policies insuring the life of the husband; that no credible evidence was introduced by either party as to the ability of the husband to obtain life insurance and/or the cost of premiums for same; and that in the absence of such evidence, the Court is without authority to enter any orders regarding same. Michel v.Michel, 31 Conn. App. 338, 341-42 (1993); Wolf v. Wolf, 39 Conn. App. 162,171 (1995).
12. That both parties have requested the court enter an unallocated alimony order; that the court has declined to do so; and that the court in the exercise of its equitable powers has entered appropriate financial orders under all the circumstances. Porter v. Porter, 61 Conn. App. 791,797-98 (2001).
13. That both parties maintain health insurance through their respective employment for the benefit of the minor children.
14. That the presumptive basic child support is $472.00 per week; that the husband's share is $335.00; and that it is equitable and appropriate to deviate from the child support guidelines on the basis of the shared physical custody arrangement General Statutes § 46b-215a-39b) (6)A).
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. Custody and visitation shall be in accordance with the Agreement of the parties dated November 13, 2001, as set forth in a certain mediation report attached thereto which the court finds to be in the best interest of the minor children and incorporates by reference herein as Schedule CT Page 3750 A.
3. Commencing April 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $1150.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or March 31, 2012, whichever shall sooner occur.
4. Commencing April 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $1,050.00 as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining child shall be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
In addition, commencing April 1, 2002, for so long as he has an outstanding child support obligation, within two (2) weeks after receipt by the husband of any gross additional cash compensation from his employment (including but not limited to any bonus, commission, or commission override), the husband shall pay to the wife 15% of such gross additional cash compensation as and for additional child support. The husband shall provide satisfactory evidence to the wife of this additional cash compensation six months from the date of this order and every six months thereafter so long as he has a child support obligation hereunder.
In addition to the sums set forth above, the husband shall contribute sixty (60%) percent of the present and future day care costs of the minor children incurred by both the husband and the wife for the minor children. The present order is based upon the current expenditures by both for the day care for the minor children in an aggregate amount of $100.00 per week. The Court expects these charges to change over time, and that the husband's obligation shall be adjusted accordingly consistent with this order.
In addition to the sums set forth above, as and for additional child support, the husband shall contribute to the normal, customary, and reasonable extracurricular activities of the minor children, as follows: One-half of any sports fees and equipment, music lessons and equipment, and summer camp for each of the children up to and including the summer prior to their senior year of high school in an amount for a total contribution not to exceed $750.00 per year per child, and any sums in excess of this amount shall be divided by the parties 25% to the husband CT Page 3751 and 75% to the wife.
5. The husband shall be entitled to keep his interest in Karp's Hardware, Inc., subject to any existing indebtedness thereon, and he shall indemnify and hold the wife harmless from any liability in connection therewith.
6. As to the jointly-owned real estate at 29 Twin Oaks Lane, Wilton, Connecticut, within thirty (30) days from the date hereof, the husband shall convey his interest therein to the wife by means of a fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. Thereafter, the wife shall have exclusive possession of the real estate and shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the husband harmless from any further liability thereunder.
7. Personal property shall be divided as follows:
A. The children's furniture shall remain in the wife's residence.
B. The home furnishings (other than the children's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
C. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
D. Each party shall be entitled to the current balances in their respective checking, savings, and money market accounts free and clear of any claims by the other.
E. Each party shall be entitled to keep their respective Merrill-Lynch "traditional" IRAs free and clear of any claims by the other.
F. The husband shall be entitled to keep the current balance in his Smith-Barney 401(k) Plan free and clear of any claims by the wife.
G. The wife shall be entitled to keep the current balance in her Penco 401(k) Plan free and clear of any claims by the husband.
F. The husband shall transfer to the wife by way of a non-taxable CT Page 3752 transfer to her sixty (60%) percent of the current balance of the Merrill-Lynch "Roth" IRA to a Roth IRA as she may direct, within thirty (30) days from the date hereof The husband shall be responsible for any tax liability associated with the conversion of the traditional IRA to a Roth IRA.
8. The husband shall maintain and pay for health insurance for each of the minor children so long as he shall be obligated to pay child support for that child, provided same is an incident of his employment and available to him at reasonable cost Unreimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by the parties, 60% by the husband and 40% by the wife. The provisions of General Statutes §46b-84 (e) shall apply.
9. The court hereby retains jurisdiction with regard to the obtaining and maintenance of life insurance by either party for purposes of support or otherwise securing its financial orders.
10. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon.
11. Commencing with the tax year 2001 and odd-numbered years thereafter, the husband shall be entitled to the tax exemption for the minor child Shaina, and the wife shall be entitled to the exemption for said minor child in even-numbered years. Likewise, commencing with the tax year 2002 and even-numbered years thereafter, the husband shall be entitled to the tax exemption for the minor child Samantha, and the wife shall be entitled to the exemption for said minor child in odd-numbered years. Each shall promptly execute the necessary documentation and deliver same in a timely manner to the other for filing with the IRS and/or state taxing authority on an annual basis.
12. Each party shall be responsible for their respective attorneys fees and costs as well as expert fees incurred in connection with this action.
13. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony order.
THE COURT
____________________ CT Page 3753 SHAY, J.
 SCHEDULE A STATE OF CONNECTICUT FAMILY SERVICES UNIT SUPERIOR COURT
123 Hoyt Street, Stamford, Connecticut 06905 Telephone: (203) 965-5282
August 18, 2000
Amelia Fogel 29 Twin Oaks Lane Wilton, CT 06897
Marc Fogel 29 Twin Oaks Lane Wilton, CT 06987
On August 17, 2000, the parents participated in the mediation program and agreed to the following parenting plan:
1. The parents will continue to share joint legal custody of their minor children, Shaina and Samantha Fogel.
2. The parents will continue to share physical custody of their two children.
3. Shaina and Samantha will be with their father on alternating weekends, from Friday to Sunday night and on Mondays and Tuesdays during the week.
4. Shaina and Samantha will be with their mother on the alternate weekend from Friday to Sunday night and on Wednesdays and Thursdays during the week.
5. The parents agree to share holidays and vacations in an equitable fashion. They agree to be flexible in the scheduling of these events.
6. Holidays and vacations will take precedence over parents' regularly scheduled time with the children.
Please feel free to contact our office if you have any questions or CT Page 3754 concerns regarding this matter.
Sincerely,
Aliza J. Benditsky, MSSW Family Services Counselor
Michael Hull Lead Family Services Counselor
cc: Louise Truax, Esq. Amy Greenberg, Esq. Wendy E. Prince, Esq.
 An Equal Opportunity/Affirmative Action Employer