[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Greenwich, Connecticut on May 18, 1991. They have four minor children, to wit: Robert, born August 7, 1992; Alexa, born April 17, 1994; Cameron, born November 11, 1995; and Ryan, born August 28, 1997. The children reside with the plaintiff wife ("wife") in the marital residence at 8 Rustic View Road, Greenwich, Connecticut. The parties have been living separate and apart since May 1999. The action was instituted by way of a Complaint dated April 19, 1999, returnable to court on May 4, 1999. To say the matter was contentious would be an understatement. More than 120 pleadings having been filed to date, not to mention the tens of thousands of dollars in legal fees incurred by both parties. The wife's fees to present and previous counsel alone total nearly $400,000, and the husband's total about $200,000. The court heard the parties more than four days. The parties, by agreement, closed the evidence on November 20, 2002.
The defendant husband ("husband") is 43 years old. While he described his overall health as good, he suffers from bipolar disorder and depression, for which he is taking prescription medications. Complicating matters is the fact that he continues to consume alcohol while medicated. He has a bachelor's degree from the University of Maine. With the exception of an eighteen-month period during 1999-00, including that of his illness and recovery, he has worked throughout the marriage. Income tax returns for the years 1997, 1998, 1999, and 2001, disclose that his salary ranged from a high of $618,231 in 1997 to a low of almost $210,000 in 2001. He lost his job in February 1999 and was not employed again until July 2000. He is currently employed by American General Insurance, where he earns a draw plus commissions. His most recent financial affidavit, based upon his income for the full previous year, indicates that he made $360,000. Commissions are paid quarterly plus 45 days. In addition to group health and life insurance, he participates in a 401(k), which has an employer match component, and a stock option plan. CT Page 3684
At the time of the marriage, he had an interest in a condominium located at 25 Indian Harbor (Unit #5), Greenwich, Connecticut, which he had purchased with a partner a year earlier for $130,000. The husband later bought out the partner. In May 1994, the wife's parents, in turn, advanced the husband the sum of $397,500 with which to buy him out. The evidence shows that, after the payment of the existing mortgage, $200,000 was paid to the husband to be applied to the purchase of 8 Rustic View.
The wife is 36 years old and also describes her health as good. She, too, has a bachelor's degree. She worked briefly at Ann Taylor prior to marriage and up through 1992 when she became pregnant with their first child. Since then she has been the primary caretaker for the minor children. She testified that she brought approximately $80,000 to the marriage in the form of a Merrill Lynch account. The wife also has an interest in a limited partnership created by her father as General Partner on January 1, 1987, called the Brooks Family Fund, which has a stated purpose of "investment." The evidence before the court in the form of Schedule K-1 for the years 1999 through 2001, clearly shows a value of her interest at the end of 2001 to be $629,639, and that she receives regular payments of between $25,000 and $35,000 per annum, mostly in the form of tax-free interest. Throughout her testimony, the wife was purposely vague about financial matters, content to let her father and his assistant take care of such things for her. The court got the impression that she just doesn't want to "get her hands dirty." (Perhaps an insight as to how she dealt with the marital problems.)
The parties' principal asset is the marital home at 8 Rustic View Road, Greenwich, Connecticut. In addition to the monies from the condo sale, the funds came by way of a $500,000 gift from her parents, as well as a $300,000 mortgage. They differ as to the fair market value of the property and each offered evidence by way of written appraisals. The opinions of value range from $1,720,000 to $1,850,000. The balance of the first mortgage is between $129,000 and $140,000, leaving an equity between $1,580,000 and $1,721,000. The court found the appraisal of Michael B. Gold, which was more recent, to be more representative of present fair market value.
Other marital assets include a substantial amount of jewelry owned by the wife, which was insured by the parties in September 1999 for nearly $100,000. The testimony demonstrated that the husband gave the wife approximately $80,000 in jewelry during the marriage. The wife testified that the jewelry is only worth about $35,000. It is clear from the testimony that the property is worth considerably more. In addition, there is a timeshare in Newport, Rhode Island, having a value of $5,000, which the husband testified was purchased prior to the marriage. CT Page 3685
Throughout the marriage, the parties have been the beneficiaries of consistent and significant gifts from the wife's parents, including contributions toward the purchase of their home, in addition to annual gifts of $20,000 each. The grandparents continue to pay for private schooling for the minor children. The uncontroverted evidence (Exhibit #14) shows that between 1996 and 2002 her parents contributed $368,135.57 on behalf of the minor children. The pattern of giving has been clear. Prior to the filing of this action, the gifts were to or for the benefit of both parties and their children. Her father has arranged a line of credit for her at Paine Webber upon which she has drawn extensively to meet expenses. In addition, according to her financial affidavit, the wife has borrowed large sums from her family in order to pay, among other things, medical expenses ($67,902.15) for a total of $200,000. The court has every reason to believe that this support will continue.
The wife has offered evidence that the husband has dissipated a substantial portion of the marital assets during the pendency of this action, and that, therefore, she is entitled to the bulk of the remaining assets, in particular the family home. The husband counters that, but for the period of his hospitalization and unemployment between January 1999 and July 2000, he was always fully employed and the principal breadwinner. Moreover, he said that the temporary orders were based upon his prior earnings, and had placed him squarely behind the "eightball." He said that he began to draw down marital assets while he was out of work and unable to meet the temporary orders. Moreover, the court notes that the immense sums paid for counsel fees, in particular by the wife, seriously undercuts her argument regarding the wastage of marital assets by the husband. While the court finds that some of the spending was self-indulgent on his part, the court found him to be a sincere and credible witness.
The wife testified compellingly and convincingly about the husband's problem drinking and late comings and goings throughout the marriage. She described her husband as "out of control." In January 1999, he told her that he "had to take a sales position or resign" due to some irregularities at work. The problem drinking continued, punctuated by sporadic violent outbursts of temper directed at her, or in one instance, the garage door. The situation came to a head during an incident on April 16, 1999, and later in July and August when the husband had to be hospitalized for a complete emotional breakdown. The husband testified that the wife never visited him in the hospital. In addition to the emotional distance which the wife placed between herself and her husband, she sought and obtained an order of protection, including exclusive possession of the marital home. They have been separated CT Page 3686 since.
The court in no way seeks to minimize the husband's self-indulgent (and in some ways, almost self-destructive) behavior. However, the sad irony of this situation is that a contributing element of the marital breakdown came about through a well-intentioned, but perhaps misguided, effort to pass on wealth and the fruits of success from one generation to the next. Unfortunately, the gifts have had a corrosive and undermining affect upon the marital relationship. The husband's income and eamings alone could well have supported a comfortable lifestyle, certainly far above the average American family. The generosity of the wife's parents permitted the young couple to get used to a lifestyle well above their own means. Moreover, it is apparent that the spoken and unspoken lines of communication ran through the senior Brooks' household and not between the spouses — a virtual guarantee of marital disharmony. It also left the husband chasing after the ghost of his father-in-law's success. This is nearly always an impossible standard to measure up to, as the husband has undoubtedly found. Life is about choices and the consequences that flow therefrom. The court believes that the wife felt compelled to choose between father and husband — and that, more often than not, she chose the former. The husband tacitly acquiesced in the choice, all the while enjoying the benefits. Like the man who rode the proverbial tiger's back, they could not get off without being eaten. When the husband suffered a total breakdown, there existed no reservoir of marital strength to weather the crisis. Their marriage was but a hollow shell. The wife, sans the husband, is confident of the continued financial support by her family, and asks the court to validate this chimerical "standard of living." Under all the circumstances, this is as unrealistic in the asking as it would be for the court to justify such an order.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in General Statutes §§ 46b-56, 46b-81, 46b-82, 46b-84, and46b-215a, including the Child Support and Arrearage Guidelines Regulations, in addition to the provisions of P.A. 02-128, hereby makes the following findings.
 1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said CT Page 3687 breakdown. The court considers the husband's self-indulgent behavior and his emotional breakdown and the events surrounding same to be significant factors.
4. That the parties entered into an Amended Final Parenting Stipulation (#212.10) dated March 14, 2002, which agreement, by Stipulation (#213.10) of even date therewith, the parties have asked the court to approve and incorporate into its final decree; and that the court finds same to be fair and equitable and in the best interest of the minor children.
5. That pursuant to a Stipulation (#183.10) dated April 30, 2001, as on file with this court, the parties have agreed that the husband may ask the court that any modification pursuant to his Motion for Modification (#180) dated January 23, 2001, be retroactive to April 1, 2001; that it is within the discretion of the court to grant a retroactive modification; Shedrick v. Shedrick, 32 Conn. App. 147, 151 (1993). That under all the circumstances, the court does not have before it sufficient credible evidence in order to make a determination of any outstanding pendente lite arrearage in alimony and child support and whether or not a retroactive modification is in order; and that the court specifically reserves jurisdiction as to these issues to a later date where further testimony and evidence may be offered. Evans v. Taylor, 67 Conn. App. 108,118 (2001).
6. That based upon the testimony and evidence, the fair market value of the marital real estate at 8 Rustic View Road, Greenwich, Connecticut, is $1,720,000; that there is a first mortgage having a current balance of approximately $128,000; and that the equity in the property is $1,529,000.
7. That throughout the marriage, until their separation, both parties made significant contributions to the acquisition, maintenance, and preservation of the family assets, including the real estate and the America General Employees' Thrift and Incentive Plan; that, in particular, the court has attributed significant weight to the husband's demonstrably greater earnings throughout the marriage, his assets at the time of the marriage, and the child-rearing responsibilities of the wife, as well as the age and education of both parties; and that the parties, and their minor children, have been the beneficiaries of substantial and consistent gifts from the wife's parents, which the court believes will continue to be made to the wife following the dissolution of the marriage.
8. That the combined net weekly income of the parties is in excess of the maximum Child Support Guidelines amount; that presumptive minimum CT Page 3688 basic child support, including health insurance, is $795.00 per week; that the husband's share is $691.00; and that it is appropriate and equitable to apply the deviation criteria set forth in Section 46b-215a-3
(b) (5) of the Child Support and Arrearage Guidelines Regulations on the basis of the coordination of total family support.
9. That as of the date of the hearing, the outstanding bill for services rendered by the guardian ad litem for the minor children, Catherine P. Whelan, was $12,458.00; and that it is equitable and appropriate that each party be responsible for one half of any and all charges due and owing as of the date of this order.
10. The Court finds that each party has sufficient liquid assets and each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action. Maguire v. Maguire,222 Conn. 32 (1992).
11. That based upon the statutory factors, including the age, health, education, assets, income, and the opportunity of the wife to acquire assets, a time-limited award of alimony is appropriate. Ippollito v.Ippollito, 28 Conn. App. 745, cert. denied, 224 Conn. 905 (1992); Milbauerv. Milbauer, 54 Conn. App. 304, 312-15 (1999). However, the continued child-rearing responsibilities of the wife, which the court considers an important factor, will have a negative impact upon her ability to seek significant gainful employment outside the home in the near term.
12. That by Memorandum of Decision (#135) dated January 10, 2000 (26 Conn.L.Rptr. 357), the court entered certain pendente lite orders based upon the facts and circumstances it had before it at that time; and that the purpose of pendente lite orders is different from that of permanent orders. Wolk v. Wolk, 191 Conn. 328, 330-31 (1983).
13. That the wife has a vested interest in a limited partnership known as The Brooks Family Fund; that said interest was acquired prior to the marriage of the parties; that her interest has a value in excess of $600,000; that the husband's contribution to the acquisition, maintenance, and preservation of same is de minimus; that it is equitable and appropriate that the husband not share in this asset; that the wife has received and will likely continue to receive substantial income from said entity in the future; and that it is equitable and appropriate to take this income into account in entering any orders of alimony and support.
 ORDER CT Page 3689
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. The parties shall share legal custody of the minor children, who shall reside primarily with the mother, who as such shall have primary physical custody, all as more particularly set forth in the Amended Final Parenting Stipulation (#212.10) dated March 14, 2002, which is hereby incorporated by reference herein and made a part hereof.
3. Commencing April 1, 2003, and monthly thereafter, the husband shall pay to the wife, as and for periodic unallocated alimony and child support, until the death of either party, the remarriage of the wife, or March 31, 2013, whichever shall sooner occur, 45% of the first $400,000 and 20% of the next $200,000 of his gross income from employment, including bonuses and commissions. Meaning and intending that his alimonyobligation shall be determined on the first $600,000 of saidcompensation, and that any sums in excess thereof shall not be subject toany such claims by the wife. In the event that the alimony shall terminate for whatever reason and either or both children are minors, commencing with the first day of the first month following such termination, and monthly thereafter, the husband shall pay to the wife a sum consistent with the then existing Child Support Guidelines or as the court may otherwise direct, as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining child shall again be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
Pursuant to General Statutes § 46b-86 (a), the term of said alimonyshall not be modifiable, except for the foregoing reasons.
4. The wife shall have exclusive possession of the jointly owned real estate located at 8 Rustic View Road, Greenwich, Connecticut, subject to any existing indebtedness, and she shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the husband harmless from any further liability thereunder. The parties shall list same for sale no later than April 1, 2004, with a mutually acceptable broker who is a member of the Multiple Listing Service or other similar organization, familiar with real estate values CT Page 3690 in the Greenwich area, at a mutually agreed upon listing price. If the parties are unable to agree upon a listing price, each shall choose a broker who, in turn shall pick a third broker, and the listing price shall be the average of all three brokers. Unless the parties shall otherwise agree, they shall accept any bona fide offer without unusual conditions, which is within 5% of the listing price. Upon sale of the property, from the proceeds shall be paid the customary and ordinary costs associated with a sale of real estate, including broker and attorney fees, conveyance taxes, fix-up expenses, and any mortgages and liens. After the payment of these sums, the net proceeds shall be divided 50% to the wife and 50% to the husband.
The foregoing notwithstanding, prior to listing of the property for sale, the wife shall have the exclusive right to purchase the husband's share of the real property for the sum of $750,000. She must give notice in writing to the husband on or before January 1, 2004, that she intends to purchase his interest in the real property, and she must be prepared to close title within ninety (90) days of her notice to the husband of her intention to purchase. The husband shall, in turn, transfer his interest in the real estate to the wife by means of a fully executed Quitclaim Deed together with a completed conveyance tax form.
While she occupies same prior to any sale or transfer, the wife shall have the sole responsibility for repairs costing $250 or less. Both parties shall share the cost of any maintenance, repairs, or replacements in excess of $250 in the same proportion as their share of the net proceeds. Either party may advance the full cost of same and an adjustment shall be made at time of sale or transfer. Neither party shall further encumber the property nor draw on the home equity line, if any, without the agreement of the other. The Court shall retain jurisdiction with regard to any conflicts arising out of this issue.
5. Personal property shall be divided as follows:
A. The children's furniture shall remain in the wife's residence.
B. The home furnishings (other than the children's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
C. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register CT Page 3691 same.
D. Except as otherwise set forth herein, each party shall be entitled to keep their respective savings, checking, and money market accounts free and clear of any claims by the other.
E. The husband shall be entitled to retain the following personal property free and clear of any claims by the wife:
1. 1109 American General Financial Group stock options, vested and unvested.
2. American General Supplemental Thrift Plan.
3. Newport, Rhode Island timeshare.
4. Scudder non-qualified Deferred Compensation Plan.
F. The wife shall be entitled to retain the following personal property free and clear of any claims by the husband:
 1. Her jewelry.
2. Her interest in the Brooks Family Fund, LP.
 3. Paine Webber IRA.
4. Paine Webber Brokerage Account.
6. The husband shall promptly notify his employer as to the change of marital status and shall cooperate with the wife in obtaining continuation health insurance coverage as provided by state and federal law. The wife shall be responsible for the payment of any premiums due for such coverage.
7. The husband shall maintain and pay for health insurance for each of the minor children so long as he shall be obligated to pay child support for that child, so long as it is an incident of his employment and available at reasonable cost. Un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by the parties, 50% by the husband and 50% by the wife. The provisions of General Statutes §46b-84 (e) shall apply.
8. The husband shall maintain a portion of the existing group term life CT Page 3692 insurance in the amount of $450,000, and shall name the wife and children as equal beneficiaries thereof for so long as he has an obligation to pay alimony and child support under the terms of this decree, and so long as said insurance is an incident of his employment and available at reasonable cost. Said life insurance is in the nature of support and shall be modifiable.
9. Within thirty (30) days from the date of this order, the husband shall transfer to the wife, by way of a tax-free spousal transfer, one-half of the balance of the Advest Individual Retirement Account.
10. Effective as of March 1, 2003, the then balance of the American General Employees' Thrift and Incentive Plan ("Plan") of the husband through his employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the attorney for the husband, 50% to the husband and 50% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to review the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
11. Commencing with the tax year 2003 and thereafter, the husband shall be entitled to the tax exemption for the minor children Robert and Cameron, and the wife shall be entitled to the exemption for the minor children Alexa and Ryan. Each shall promptly execute the necessary documentation and deliver same in a timely manner to the other for filing with the IRS and/or state taxing authority on an annual basis.
12. Each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action. In addition, each party shall pay to Katherine P. Whelan, Esq., attorney for the minor children, a sum equal to one-half the outstanding bill for her fees and costs incurred as of the date of this order as follows: within thirty (30) days from the date hereof the sum of $3,000, and the balance due within sixty (60) days thereafter.
13. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. Specifically, the husband shall be responsible for the Judgment Lien in favor of Nusbaum Parrino, CT Page 3693 P.C., and he shall make arrangement for payment in full, together with interest, within ninety (90) days following the date of this order. In addition, the husband shall be responsible for the state and federal income taxes for the year 2001, Citibank Visa, the debt to his parents, the American Express bill, and the bill to Innis Arden. The wife shall be specifically responsible for her Paine Webber line of credit, personal loans to Joseph E. Brooks, and the Town of Greenwich for real estate taxes for the year January 1, 2002 to January 11, 2003.
14. The court reserves jurisdiction to enter educational support orders for each of the minor children pursuant to Public Act 02-128.
15. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony order.
 THE COURT Shay, J.
CT Page 3694